## *In re* ASCHER.

CRIMINAL PROCEDURE—MISTRIAL—TWICE IN JEOPARDY.

> Where, after the jury is sworn in a criminal case, the court finds that a juror is so biased that he is unfit to sit in the cause, the jury may be discharged, and the respondent will not be deemed to have been placed in jeopardy by the proceedings.

*Habeas corpus* by Edward Ascher to the sheriff of Wayne county, with ancillary writ of *certiorari* to Judge Murphy, of the recorder's court of Detroit, to obtain a discharge from custody on a charge of murder. Submitted February 20, 1902. (Calendar No. 19,140.). Petitioner remanded May 19, 1902.

*George F. Monaghan*, for petitioner.

*Ormond F. Hunt*, Prosecuting Attorney, and *Henry A. Mandell*, Assistant Prosecuting Attorney, for the people.

---

MOORE. J.  The petitioner is now detained by the sheriff of the county of Wayne, pending an indictment charging him with the murder of Valmore C. Nichols. The petition filed in this cause for his discharge shows that said charge is still pending and undetermined in the recorder's court of the city of Detroit. Petitioner claims he has once been in jeopardy, within the meaning of the Constitution of the State and of the United States, and cannot again be tried, but is entitled to his discharge.

After the jury was obtained and a portion of the witnesses for the people were sworn, information came to the trial judge in relation to some of the jurors and the officers having charge of the jury, which led him to make an investigation.  In his return to the writ of *certiorari* the trial judge returned that this investigation was made by him with no one present except the court stenographer and the person he was then examining.

" The investigation and inquiries so made are supplemented by my observation of the conduct of juror Henry G. Poupard in open court in his seat in the jury-box during the progress of this trial, the flagrancy of which led me to make a statement to him in the presence of all the jurors herein in the court-room upon the adjournment of court at noon upon Tuesday, the 12th day of November, 1901.  The said investigation and inquiries were made for the purpose of determining whether or not the jurors herein, or any of them, were, when impaneled herein, unbiased and unprejudiced jurors, and otherwise qualified to sit herein; and also for the purpose of determining whether or not, since the impaneling of the jurors herein, the said jurors, or any of them, have, by their conduct or statements, so conducted themselves as to interfere with the due and orderly administration of justice to that extent where the rights of the people or the defendant herein were imperiled or endangered.  The further purpose of such investigation and inquiries was to ascertain whether or not the officers, or any of them, in charge of the jurors herein had been guilty of any misconduct, and, if so, whether such misconduct would, in the event of a conviction herein, be such as to nullify the proceedings had.

From such investigation, inquiries, and from the personal observation of the court, I do specifically find and determine the facts to be:

"That juror Henry G. Poupard, upon his *voir dire* examination herein, purposely and willfully concealed a material fact when asked about it.    Upon his *voir dire* examination said juror Henry G. Poupard stated that he did not know any member of the family of this defendant, other than Mr. Simon Ascher.    His voluntary statement to me under oath, upon Thursday, the 14th day of November, 1901, is that, while engaged as a saloon keeper in the city of Detroit, he had business dealings with Louis Ascher, the brother of said defendant, and that said dealings covered a considerable period of time, and that he now is a debtor of the said Louis Ascher in a small sum of money as the result of said dealings.    In the light of the subsequent conduct and statements made by the said juror Henry G. Poupard during the progress of this trial, as ascertained by me from the said investigation and inquiries, and from personal observation of him, I am led to the conclusion, and do conclusively find, that, at the time he was impaneled herein, he was not an impartial and unbiased juror, and I do conclusively find that, in order to be accepted as a juror herein, he fraudulently and willfully concealed from the court and counsel his bias and prejudice, which so existed both at the time and before he was sworn and impaneled herein as a juror.

"I further find and determine that, from the inception of this trial, the said juror Henry G. Poupard has frequently, by his statements and by his manner in making such statements, expressed to his colleagues disbelief in the testimony given by the witnesses herein; that he has expressed his belief in the innocence of the said defendant to his fellow jurors; that he has said, in the presence of some of his fellow jurors, that the officials were persecuting the defendant herein, and that the police officers in this case were endeavoring to procure a conviction of defendant herein, whether guilty or innocent; that he has repeatedly endeavored to influence some of his colleagues by criticising, ridiculing, and belittling the testimony of the witnesses sworn herein.    I further specifically find and determine that upon the night of Saturday, the 9th day of November, 1901, at the Hotel Normandie, in this city, the said Henry G. Poupard was guilty of gross

misconduct in purchasing and furnishing to some of his fellow jurors herein an excessive quantity of intoxicating liquor, and in then and there procuring the intoxication of Patrolman Daniel O'Keefe, who was then in charge of the said jurors. I further specifically find and determine that upon the night of Saturday, the 9th day of November, 1901, at said Hotel Normandie, the said juror Henry G. Poupard did hold communications with Charles Lewis and Edward W. Harmeyer, who were not jurors herein, without receiving permission from the court, and that such ·communications were had in the presence of no officers in charge of the jurors herein. I find and determine that at the inception of this case, and before the taking of testimony had begun, the said juror Henry G. Poupard was biased and prejudiced against the people, and in favor of the defendant herein, to such an extent as to disqualify him serving as a juror herein; that his conduct and statements following the taking of testimony grew out of the bias so held by him; and that he has made a studied and persistent effort to create a like bias in the minds of the other jurors herein.

"I find and determine that juror John E. Sauer, throughout this trial, and from its inception, has exhibited a strong and studied bias and prejudice; that at no time since he was impaneled herein has he been an impartial juror. I further find and determine that he has studiously shown his bias and prejudice for the purpose of influencing other jurors herein, and that he has ridiculed and belittled the testimony of witnesses sworn, herein in the presence of his fellow jurors. I further find and determine that, for the purpose of discrediting the testimony of one of the witnesses herein, the said John E. Sauer willfully misstated the reasons for the reversal of this case by the Supreme Court of this State. I further conclusively find and determine that upon the night of Saturday, the 9th day of November, 1901, at the Hotel Normandie, the said John E. Sauer was guilty of gross misconduct in being a party towards the procurement of the intoxication of Patrolman Daniel O'Keefe, and that his misconduct in that regard was of such a character as would, in the event of the conviction of the defendant herein, nullify the proceedings here had and require a new trial of the issue herein involved.

"I further find and determine that upon the night of Saturday, the 9th day of November, ·1901, while in charge alone of the jurors herein at the Hotel Normandie,

in this city, Patrolman Daniel O'Keefe became and was intoxicated, and that his intoxication incapacitated him from discharging the duty then and there devolving upon him, and that, by reason of such intoxication, unauthorized communication was had by juror Henry G. Poupard with Charles Lewis and Edward W. Harmeyer, they not being jurors herein, and that there was then and there opportunity given the jurors herein for other unauthorized and improper communications with persons with whom communication was then and there improper.    I further find and determine that, in my opinion, the misconduct of the said officer was of such a character that, in the event of a conviction of the defendant herein, the facts being disclosed to the court, a new trial of this cause would be required.

"From the foregoing findings of fact I have concluded that it is within my power, and that it is my imperative duty, to discharge the jury herein impaneled from further consideration of this case, and formally do declare this trial to be a mistrial."

The findings of fact were duly entered upon the court journal.   In the presence of counsel for the respondent and the respondent himself, the court then made an order in which the findings of fact were recited, and that the trial was a mistrial, and discharging the jury from further consideration of the case, and remanding the respondent to the custody of the sheriff pending a new trial. Counsel for the respondent moved the court for his discharge, which motion was overruled, and this proceeding is brought.

It is claimed the question is one of greater importance than the personal rights of the respondent, and involves the integrity of the right of trial by jury.   It is said that no person shall be placed twice in jeopardy for the same offense; nor shall he be deprived of life, liberty, or property without due process of law.   Const. U. S. Amend. art. 5.   No one will question this right of a person accused of crime.  . The trouble arises in determining when one is placed twice in jeopardy.

It is claimed the proceedings heretofore had in this case show the respondent has been placed in jeopardy, and

that he should now be discharged; citing Cooley, Const. Lim. 327; *People* v. *Harding*, 53 Mich. 485 (19 N. W. 155); *People* v. *Taylor*, 117 Mich. 585 (76 N. W. 158). The courts of the English-speaking people have for centuries been exceedingly jealous of the right of persons accused of crime to a fair and impartial trial. This has been provided for, not only by the action of the courts, but, in this country, by making provisions in the written constitutions intended to bring about this result. Section 29, art. 6, of the Constitution of Michigan provides, "No person, after acquittal upon the merits, shall be tried for the same offense." While this language differs from that used in the United States Constitution, the law of jeopardy is doubtless the same under both provisions. *Village of Northville* v. *Westfall*, 75 Mich. 603 (42 N. W. 1068).

At one time, the doctrine of placing the accused in jeopardy but once was invoked as a bar to a second trial where a jury had disagreed, or a member of the panel had been taken so ill the trial could not proceed, or had died; but such a claim would no longer be made. In *People* v. *Harding*, 53 Mich. 481 (19 N. W. 155), where the jury had disagreed, it was contended the respondent had been placed in jeopardy, and, as the record did not show it had been judicially determined the jury were unable to agree, nor any necessity for their discharge, that the respondent could not again be put upon trial. In disposing of the case Justice COOLEY said:

"This case is therefore to be determined on common-law rules; and the respondent relies upon *People* v. *Jones*, 48 Mich. 554 (12 N. W. 848), as ruling it. That case is not very fully reported. The record showed that the respondent was put on trial before a jury duly impaneled and sworn; that the prosecution went into the proofs and rested; that thereupon the jury was discharged, and a new information filed against the respondent for the same offense, upon which he was tried and convicted. The proceedings on the first information were pleaded as a bar to the second, and this court sustained the bar. No reason appeared for discharging the jury, and the discharge stood

130 MICH.—35.

upon the record as an act of the court, not shown to have been assented to or compelled by any necessity. On each of the trials appearing in the record before us, the jury reported to the court an inability to agree, and were immediately discharged by its order. It is conceded on behalf of respondent that, when it is found impossible for the jury to agree, the judge may lawfully discharge them for that reason, and the discharge is not an acquittal; but it is contended that the record must show that the judge found that a necessity for the discharge existed; and upon the validity of this contention the case must turn.

"There is no doubt the report of the jury that they cannot agree is the proper evidence upon which the judge should act in determining upon the impossibility of their reaching a verdict. But he may not be satisfied with their first report, and has a right to keep them together for further consultation as long as in his opinion there is reasonable ground for believing they may finally agree. The whole subject, however, is referred to his judgment; and when he decides, no one can question his conclusion. And if in this case he had directed an entry upon the journal of the court that, being satisfied the jury could not agree, he directed their discharge, no question could be made of the right to proceed to a new trial. But while it would be very proper to make such an entry, it has never been the practice in this State to do so. The fact that the judge, on receiving the report of the jury of their inability to agree, directs their discharge, is understood to be an assent on his part to their own conclusion, and a determination by him that the necessity for their discharge without a verdict has arisen. And we think this a proper view to take of his action. Any other would be technical, and tend in many cases to defeat justice."

In *People* v. *Taylor*, 117 Mich. 583 (76 N. W. 158), the respondent having been once acquitted, it was held he could not be put upon trial again; but in disposing of the case Justice HOOKER used the following language:

"This case should be distinguished from a class of cases where, after a jury is impaneled and charged with the defendant and his case, some intervening necessity compels the discharge of the jury, *e. g.*, the death or sickness of a juror, the ending of the term, a disagreement, etc., and possibly a continuance, granted upon the motion of

the defendant. The case of *Stewart* v. *State*, 15 Ohio St. 155, is such a case. After the jury was sworn, it was discovered that one of the jurors had been on the grand jury which found the indictment in the case. The defendant's counsel objected to proceeding to trial with the jury thus impaneled, but declined to waive any of the defendant's rights. The jury was discharged, and a conviction by another jury was sustained. Such a case was *People* v. *Gardner*, 62 Mich. 312 (29 N. W. 19). There a question arose over the regularity of the jury, and a new one was called upon the defendant's objection to the first. It was said by Mr. Justice CHAMPLIN that 'he has no right to complain that his objection was sustained, and the discharge of the jury with his consent cannot be set up as an acquittal.'"

See *People* v. *White*, 68 Mich. 648 (37 N. W. 34).

These cases clearly recognize the doctrine that occasions may arise after the trial is entered upon, making it necessary to stop the trial and discharge the jury, without it necessarily following that respondent has been so placed in jeopardy that he cannot again be put upon trial. While the precise question involved in this case has not been before this court, it is not a new question. In *U. S.* v. *Morris*, 1 Curt. C. C. 23 (Fed. Cas. No. 15,815), after the trial was entered upon, a jury was discharged under circumstances very similar to the case at bar. In holding that the respondent might again be put upon trial the court said:

"The rule of the common law, as shown by the authorities cited by the defendant's counsel, is that neither party has a right of challenge, after the juror is sworn, for cause then existing. But it by no means follows that it is not in the power of the court, at the suggestion of one of the parties, or upon its own motion, to interpose and withdraw from the panel a juror utterly unfit, in the apprehension of every honest man, to remain there. Suppose a prisoner on trial for his life should inform the court that a juror had been bribed to convict him, that the fact was unknown to him when the juror was sworn, and that he had just obtained plenary evidence of it, which he was ready to lay before the court, is the court compelled to go on with the trial? Suppose the judge, during the trial, obtains by

accident personal knowledge that one of the jurors is determined to acquit or convict without any regard to the law or the evidence, is he bound to hold his peace? In my judgment, such a doctrine would be as wide of the common law as it would be of common sense and common honesty. The truth is that this rule, like a great many other rules, is for the orderly conduct of business. There must be some prescribed order for the parties to make their challenges, as well as to do almost everything else in the course of a trial. As matter of right, neither party can deviate from this order. And it is the duty of the court to enforce these rules, which are for the general good, even if they occasion inconvenience and loss in particular cases. But there goes along with all of them the great principle that, being designed to promote the ends of justice, they shall not be used utterly to subvert and defeat it; being intended as a fence against disorder, they shall not be turned into a snare. They do not tie the hands of the court, so that when, in the sound discretion of the court, the public justice plainly requires its interposition, it may not interpose; and it would be as inconsistent with authority as with the great interests of the community to hold the court restrained.

"A very eminent English judge has treated this rule concerning challenges just as I believe it should be treated. Chief Justice Abbott says:

"'I have no doubt that if, from inadvertence or any other cause, the prisoner or his counsel should have omitted to make the challenge at the proper moment, the strictness of the rule which confines him to make his challenge before the officer begins to administer the oath would not be insisted on by the attorney general, or, if insisted upon by him, would not be allowed by the court.' *The Derby Case,* Joy, Conf. 220.

"That is, like other rules of procedure in trials, it is in the power of the court to dispense with it when justice requires.

"But the interposition of the court may be placed on even higher ground, supported by authority which in this court is decisive. In *U. S.* v. *Perez,* 9 Wheat. 579, the question came before the Supreme Court whether it was in the power of the circuit court to discharge a jury in a capital case, and afterwards put the prisoner on trial by another jury. The distinction between capital cases and misdemeanor, under the provision of the Constitution of

the United States, cited by the defendant's counsel, is very plain; yet, speaking even of capital cases, the court say:

" 'We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper to interfere.'

".That a court would interfere far more readily in a case of misdemeanor there can be no doubt, and it is so asserted in terms by Story, J., in *U. S.* v. *Coolidge,* 2 Gall. 364 (Fed. Cas. No. 14,858). In *U. S.* v. *Shoemaker,* 2 McLean, 114 (Fed. Cas. No. 16,279), and *U. S.* v. *Gilbert,* 2 Sumn. 19 (Fed. Cas. No. 15,204), it will be found that Justices Washington, Story, and McLean have all acted in their circuits upon these principles.

"Now, if the court has such a discretion, and if, as the Supreme Court say, it is to be exercised even in capital cases, where the ends of public justice would otherwise be defeated, what case can be imagined more fit for its interposition than one where the court finds that a juror is so biased, either against the prisoner or the government, that he is unfit to sit in the cause? The truth is that it is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case. I hazard nothing in saying that no such right is known to the common law."

The case of *Simmons* v. *U. S.,* 142 U. S. 148 (12 Sup. Ct. 171), was a case very similar to this. The opinion is by Justice Gray, who said:

"The general rule of law upon the power of the court to discharge the jury in a criminal case before verdict was laid down by this court more than 60 years ago, in a case presenting the question whether a man charged with a capital crime was entitled to be discharged because the jury, being unable to agree, had been discharged, without his consent, from giving any verdict upon the indictment. The court, speaking by Mr. Justice Story, said:

" 'We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office.' *U. S.* v. *Perez*, 9 Wheat. 579.

"A recent decision of the court of queen's bench, made upon a full review of the English authorities, and affirmed in the exchequer chamber, is to the same effect. *Winsor* v. *Reg.*, L. R. 1 Q. B. 289, 390, 6 Best & S. 143, and 7 Best & S. 490.

"There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors, or any of them, are subject to such bias or prejudice as not to stand impartial between the government and the accused. As was well said by Mr. Justice Curtis in a case very like that now before us:

" ' It is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case.' *U. S.* v. *Morris*, 1 Curt. C. C. 23, 37 (Fed. Cas. No. 15,815).

"Pending the first trial of the present case, there was brought to the notice of the counsel on both sides, and of

the court, evidence on oath tending to show that one of the jurors had sworn falsely on his *voir dire* that he had no acquaintance with the defendant; and it was undisputed that a letter since written and published in the newspapers by the defendant's counsel, commenting upon that evidence, had been read by that juror and by others of the jury. It needs no argument to prove that the judge, upon receiving such information, was fully justified in concluding that such a publication, under the peculiar circumstances attending it, made it impossible for that jury, in considering the case, to act with the independence and freedom on the part of each juror requisite to a fair trial of the issue between the parties. The judge having come to that conclusion, it was clearly within his authority to order the jury to be discharged, and to put the defendant on trial by another jury; and the defendant was not thereby twice put in jeopardy, within the meaning of the fifth amendment to the Constitution of the United States."

Both of these cases were cited with approval in *Thompson* v. *U. S.*, 155 U. S. 271 (15 Sup. Ct. 73).

In our effort to see that the rights of persons accused of crime are protected, we should not overlook the fact that the people also have interests that should be safeguarded. It is a right of which the accused cannot be deprived to have his case tried by an impartial jury. The people have an equal right to have their case tried by a jury no member of which has obtained a place thereon for the purpose of preventing a righteous verdict. If, during the progress of the trial, the trial judge learns, or it is satisfactorily made to appear to him, that one or more jurors had obtained places on the jury intending to convict the accused whatever the evidence, can there be any doubt that it is not only his right, but his duty, to say there has been a mistrial? Can there be any doubt of the converse of this proposition? The accused has a right to a trial by a fair and impartial jury; but he has no vested right to a trial by a jury some member of which is not impartial, but who obtained his place thereon for the purpose of acquitting the accused, whatever might be the evidence. The trial judge would not be justified in discharging a jury

and declaring a mistrial for slight cause; but if the facts exist as found by the trial judge after a careful investigation made by him, it would be a reflection upon the administration of justice to say the trial must proceed. The conduct of the two jurors and of the court officer indicates a very strong probability that improper influences were at work which might affect the verdict of the jury, and justified the conclusions of the trial judge.

The other questions argued by counsel have been considered, but we do not deem it necessary to discuss them. The application for the discharge of the respondent is denied.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.