PEOPLE v. HUTCHINGS.

137  527
149  ³433

1. CRIMINAL LAW—SECOND JEOPARDY.
    Where, on a juror becoming ill after the prosecutor's opening statement, but before the introduction of any testimony, the court, over respondent's objection, discharges the remainder of the jury from further consideration of the case, on the ground that respondent is out on bail and other more urgent matters require the attention of the court, he is not so put in jeopardy as to preclude a subsequent trial.

2. SAME—TRIAL—CURING ERROR.
    Refusal, in a prosecution for larceny, to permit respondent to show restitution by cross-examination of the complaining witness, is not prejudicial where the whole matter was developed at a later stage of the trial.

3. SAME—EVIDENCE—COMPARISON OF HANDWRITING.
    Where, in a prosecution for larceny of money, alleged to have been obtained through the forgery of a draft by respondent, he claimed that he was paid the money secured by the draft, by a third person, to be used to purchase wood in the country, and introduced a receipt for wood so purchased in his own handwriting, the draft being properly in evidence, it was not error for the court to permit respondent's signature on the receipt and the indorsement on the draft to be compared.

4. SAME—ADMISSIONS OF CO-RESPONDENTS.
    Where respondent and another were informed against for the lar-

ceny of money obtained through a forged draft, and respondent
was separately tried before his co-respondent, and was not
charged with conspiracy, evidence given by his co-respondent
in the police court, by which he attempted to fix the crime
on respondent, was inadmissible.

5. SAME—ARGUMENT OF COUNSEL.

Where, in a prosecution for the larceny of money, alleged to
have been obtained through a forged draft, the draft and a
receipt signed by defendant were introduced in evidence, it
was not error for the prosecuting attorney, in argument to
the jury, to call their attention to identical peculiarities in
the handwriting on the receipt and in the indorsement on the
draft.

6. SAME.

Where, in a criminal prosecution, there is nothing in the record
justifying a claim that prior to the offense in question re-
spondent has done anything requiring him to have a pal, it
is improper for the prosecuting attorney, in argument, in
commenting on character witnesses introduced, to state that
none of the character witnesses knew anything about what
respondent was doing while living in D., or his reputation,
and the only man called from D., where respondent resided
two years, was one of respondent's pals.

7. SAME—REQUESTS TO CHARGE.

Matters sufficiently covered by the general charge need not be
repeated.

Error to recorder's court of Detroit; Phelan, J. Sub-
mitted June 17, 1904. (Docket No. 188.) Decided Sep-
tember 13, 1904.

Frank E. Hutchings was convicted of larceny. Re-
versed.

*Samuel W. Burroughs*, for appellant.

*Ormond F. Hunt*, Prosecuting Attorney, and *Louis
C. Wurzer*, Assistant Prosecuting Attorney, for the
people.

MOORE, C. J. The respondent was convicted of the
crime of larceny. He has brought the case here upon
writ of error.

Prior to October 11, 1902, Mrs. Claude E. Price was a resident of Bay City, where she had some money in a bank. In October, 1902, she lived on Duffield street, in Detroit. She requested the bank in Bay City to send her a draft. It sent her one for $187.31, payable to Mrs. C. E. Price, and inclosed it in a letter addressed to Mrs. C. E. Price, Detroit, Mich. The mail carrier, instead of delivering the letter to Mrs. C. E. Price, Duffield street, October 11th, delivered it to C. E. Price & Co., 1304 West Fort street.

On October 13th the respondent presented it to the Wayne County Savings Bank, first indorsing his name on the back of it in the presence of the paying teller. It then had the words "Mrs C E Price" over the signature of Mr. Hutchings. He obtained the money on it.

Soon after this, it was found the indorsement purporting to be that of Mrs. Price was not hers. The paying teller went to respondent's house, but he was not at home. Later Mr. Gardner, who had been in the employ of the bank, and was a relative of respondent, was requested to look him up. He did not find respondent at home, and left word for him that something was wrong with the draft. After respondent was told of this by his wife, he went to the bank, and the same information was given him. He expressed his surprise, and was requested to accompany the teller to police headquarters. On his way there he expressed his desire to make the bank good, and said he supposed the draft was all right. He explained he had assisted some men in making a horse trade at the market for which he was to be paid $5; that they had the draft, and, being strangers to the bank, wanted the respondent, who had before dealt with the bank, to get the money; and that he drove with them in a buggy to the bank, where they waited outside while he got the money. He repeated this story to the officers after he got to the police headquarters. He was searched, and $12 was found on his person. Later he told the officers he got the draft from C. E. Price & Co., and got it cashed at their request.

He also produced from his stocking $70. The two Prices were arrested, and they as well as defendant, after a preliminary examination, were held for trial in the recorder's court. Respondent's counsel demanded a separate trial for him. An information was filed against him for larceny, and, upon his standing mute when arraigned, a plea of not guilty was entered, and a trial was had, with the result before stated.

It was his claim upon the trial, and is here, that he was acquainted with the two Prices; that they owed him $50; that he desired to buy wood in the country, to sell again, and had sought a loan from them to enable him to do so; that they sent for him to come to their place of business, and showed him this draft, which had the indorsement on the back of it, "Mrs C E Price," and told him to get the money at the bank, pay himself what they owed him, use the balance to buy wood, and divide the profits with them; that he, in the utmost good faith, got the money at the bank, and that the occasion of his being in the country when the teller and Mr. Gardner looked for him was to buy wood; that he bought $90 worth of wood. A receipt for some of the money paid thereon, in his handwriting, except the signature, was produced in evidence on the trial. It was his further claim that when his wife told him about the draft he at once saw the Prices, who told him how to account for having the draft by telling the horse-trading story. It is his claim he acted in good faith in getting the money.

The Prices' version is that the respondent took the draft from their desk, and made the indorsement and got the money after they told him they were afraid, and that the draft should be returned to the post office.

The record is long, and the assignments of error are many. It may be stated that the following grouping will cover them:

(1) Discharge of the jury; (2) prejudicial remarks by the court; (3) restriction of cross-examination; (4) evidence of restitution excluded; (5) comparison of hand-

writing; (6) cross-examination of defendant; (7) police court testimony of codefendant E. W. Price; (8) argument of prosecutor; (9) charge of court and requests to charge; (10) variance between information and proof; (11) failure to file written reasons for denying motion.

As to groups 2, 3, 6, 10, 11, we think it unnecessary to say more than that we have examined them in connection with the record, and do not think that they are well taken.

(1) Did the court err in discharging the first jury? The facts in relation to that transaction are as follows: On the first day of the trial, after the jury were sworn and the counsel for the respective parties had made their opening statement, but before any testimony was taken, the case was adjourned until the next morning. The next morning one of the jurors was ill, and the case was adjourned until the following morning. The following morning the juror was still ill, and it became necessary to decide what should be done. Counsel for respondent desired that another juror be drawn from the regular panel, the jury resworn, and the trial proceed. The judge inquired if the respondent was in custody, and was informed that he was out on bail. The court then stated there were but five days remaining in the term; that other business demanded the attention of the court; that the best interests of the people required the court to take up some other case; and directed an order to be entered reciting the facts, and discharging the 11 men from the further consideration of the case. When a new jury was impaneled, objection was taken to any further proceedings on the ground that respondent had been once placed in jeopardy. We do not think the court erred in his conduct of this feature of the case. 17 Am. & Eng. Enc. Law (2d Ed.), pp. 1258–1260, and cases cited therein.

(4) Evidence of restitution excluded. Was there error in this? The court might very properly have allowed respondent to show by the teller on the cross-examination all that occurred between the bank officers and the respondent. The substance of this, however, was gone into later,

and we do not think respondent was prejudiced as to this feature of the case to that extent as to require a reversal of the case for that reason.

(5) Was there error in relation to the comparison of handwriting? The receipt for wood was introduced in evidence by Mr. Hutchings. The draft was properly in evidence. We have no doubt it was proper to compare these handwritings. The record is not clear that Exhibit 2 was introduced in evidence, and when the question was raised the comparison with it was not urged.

(7) Did the court err in admitting the testimony of E. W. Price, given in the police court, to be read in evidence? Mr. Price was produced and sworn. When he was asked about the transaction his counsel claimed, as he had not been tried, he should not be compelled to answer, as his answer would serve to incriminate him. This claim was sustained. Against the objection of respondent, his testimony given in the police court, covering 10 pages of the printed record, was read to him, and he was permitted to answer that he so testified in the police court. In reply to the objection to this testimony, counsel for the people say the objection to it was waived by counsel for respondent, and it is not necessary to discuss it. We do not so understand the record. Counsel for respondent stated several reasons why he objected to this testimony, some of which were perhaps removed by what subsequently occurred, but he persisted in the claim that, as his client was separately charged with larceny, and was then being tried separately, anything Mr. Price might have testified to in the police court could not be used against Mr. Hutchings. The effect of allowing this testimony was to get 10 printed pages of testimony before the jury without respondent having the benefit of cross-examination. We held in *People* v. *Butler*, 111 Mich. 483 (69 N. W. 734), that where two persons were on trial for conspiracy, and one of them had voluntarily testified in the police court, this testimony was competent as against the one giving it. But that is a very different case from this one. Here the information

was against Hutchings alone.    He was not charged with conspiracy, but with larceny.    Price was not upon trial. This testimony was taken after Price and Hutchings had ceased to act in harmony, and when each was seeking to place the crime upon the other.    We think the admission of this testimony was error.

(8) Should the case be reversed because of the argument of counsel?   We think much of the argument was justified by the testimony.    To illustrate:   The attorney for the people said to the jury:

"Now, gentlemen of the jury, I am going to prove to you by the testimony in this case that Hutchings did commit the forgery upon the back of this draft, and that it was Hutchings himself who signed the name 'Mrs E C Price' upon the back of this check, although he denies having done so.   *   *   *   I will first show it to you by the two signatures, and I will point them out to you. One of the peculiarities of Hutchings' handwriting is this: That he never uses a period, he never puts a period behind the capital letters.    I will call your attention to the signature 'Mrs C E Price.'    There is no period behind the 'Mrs,' there is no period behind the 'C,' there is no period behind the 'E,' although all these different letters and abbreviations require periods.   *   *   *   I call your attention to the signature 'F E Hutchings' below.   No periods between 'F,' no period between 'E.'   I call your attention— I would like to have you gentlemen remember that, because you will have a right to take this draft and papers in the jury-room with you to compare them.   I call your attention also to the similarity of the 'c' in Price— the small 'c'—and the 'c' in Hutchings."

We have facsimiles of the signatures before us, and we think this argument was justified by them.   We cannot, however, say the same of the following:

"They talk about character witnesses.   He was here two years in the city of Detroit, and none of these character witnesses knew anything about what he was doing here; didn't know anything about his reputation; and the man—the only man—they called from Detroit, who did know him, was a pal of his in Detroit."

There is nothing in the record which justified the claim

that prior to this respondent had done anything requiring him to have a pal, or the calling of the witness as to good reputation a pal of respondent's, and the characterization had better have been omitted. We do not mean to say that, had this been the only error, we should reverse the case.

(9) Did the court err in refusing the requests of counsel and in his charge to the jury? We have examined the requests carefully, and the charge as well. All of the requests which were good law were fully covered in a charge of unusual clearness. This group of assignments of error is not well taken.

For the reasons stated, the conviction is set aside, and a new trial ordered.

The other Justices concurred.