PEOPLE *v.* BROSKY.

CRIMINAL LAW—CONSTITUTIONAL LAW—MISTRIAL—FORMER JEOPARDY—ABUSE OF DISCRETION.

In a prosecution for an offense of gross indecency, where defendant's counsel resented a remark of the trial court as uncalled for and was fined for contempt, it was an abuse of discretion, in view of the defendant's constitutional rights (article 2, § 14), for the court to dismiss the jury and declare a mistrial without making any effort to discover what effect the episode had made upon the minds of the jurors.

Error to recorder's court of Detroit; Heston (William M.), J. Submitted January 11, 1923. (Docket No. 135.) Decided April 27, 1923.

Joseph Brosky was convicted of the crime of gross indecency, and sentenced to imprisonment for not less than 1 nor more than 5 years in the State prison at Jackson. Reversed, and defendant discharged.

*Nichols, Nichols & Nichols (L. E. Barnett,* of counsel), for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *W. Gomer Krise,* Assistant Prosecuting Attorney, for the people.

BIRD, J. Defendant was charged with the offense of gross indecency in the recorder's court in the city of Detroit. The matter came on for trial on March 24, 1922. The testimony offered by the people tended to show that the indecent act was committed in the men's toilet at the Grand Trunk passenger station. Nicholas Klee, a Grand Trunk Railway employee, testified that he observed defendant through the skylight commit an act of gross indecency upon the person of one Annis, who was in the adjoining apartment, and that it was accomplished by means of a hole in the partition separating the two apartments. The inference was that defendant committed the act while seated on the stool in his apartment. Other testimony was introduced in corroboration of this testimony.

Defendant's counsel, Mr. Nichols, offered himself as a witness on behalf of his client. It appeared from his testimony that he had gone down to the station and looked over the situation. He evidently did not agree with the testimony of Klee as to the relative position of the seat and the hole in the partition. The material part of Mr. Nichols' testimony was as follows:

"*Q.* Before going down there you read over the testimony given by Mr. Klee in the examination?

"*A.* I read the testimony and wanted to see for myself. * * * Stool number 2 and number 3—there was a man in number 4. I didn't go in that one, but I went into the other stools to see exactly the situation there, and looked up at the skylight over stool 4, where this man was. There was a skylight which you could see someone had been erasing off a little hole

about that. The rest of them were covered with soot, because I went on the outside and looked at them. It looked as though they had never been cleaned. As I sat in those stools, number 2 and number 3, as it came out in the examination, there is a partition between them, and there is a hole, but you had to get away to the edge of the stool, like that (indicating), get away up here to look through, and your head would nearly touch the door.

"*The Court:* You were stretching your neck as far as you could?

"*A.* I did. I was much interested in this case, and very much so, your honor, because it is a serious case. I looked and stretched my neck as far as I could without falling off the stool, and then only looked through it slanting—I could not get right straight opposite, like that, but I could see through that way (indicating), and the door was right there (indicating).

"*The Court:* And you were unable to get your mouth up to the hole?

"*A.* I think that remark is uncalled—I did not, sir—and I resent your remark. I did not try to put my mouth to the hole, and I think your remark is uncalled for.

"*The Court:* What?

"*A.* I did not try to put my mouth to the hole— that remark was uncalled for.

"*The Court:* What do you mean, sir? I am trying to determine whether it is physically possible for that act to be committed?

"*A.* I did not put my mouth to that hole there.

"*The Court:* What do you mean by making that statement, Mr. Nichols?

"*A.* I mean this. I did not put my mouth to that hole—I did not.

"*The Court:* Are you in a position to apologize for that statement?

"*A.* I apologize for that? I think the remark was uncalled for.

"*The Court:* You are fined $25 for contempt.

"*A.* All right, sir.

"*The Court:* Or spend ten days in the county jail. That is all.

"*The Court:* I think in view of what has taken place it will be necessary to call this case a mistrial.

"*Mr. Kent:* At this time, your honor, I move to call this case a mistrial.

"*Mr. Healy:* And at this time I move for a separate trial for the defendants.

"*The Court:* Very well."

The jury was then dismissed from further duty in the case. The matter came on for trial again on April 24th and defendant's counsel asked permission for defendant to withdraw his plea for the purpose of making a motion. This was granted. Counsel then moved to quash the information on the ground that defendant had been formerly in jeopardy on the same charge. This motion was overruled by the court. The proofs proceeded and defendant was convicted as charged.

The sole question raised is whether the episode at the first trial was adequate cause for dismissing the jury. With reference to the power of courts to dismiss juries, it is observed by Ruling Case Law:

"American authorities generally announce the rule that the power to discharge the jury is within the sound discretion of the trial judge, and that his exercise of such discretion will not be reviewed by the appellate courts unless its clear abuse appears. The power ought, of course, to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." 16 R. C. L. p. 321.

In the case of *People* v. *Parker,* 145 Mich. 488, the rule was announced that under our Constitution (1850), art. 6, § 29, a jury empaneled, accepted and sworn cannot be discharged except for inability to agree, or for some other *overruling necessity* which courts hold necessary to constitute a mistrial. The question then arises as to whether the episode between court and counsel created such an overruling necessity as to justify the action of the trial court in dismissing the jury. In determining whether an overruling necessity existed in the present case we must consider

the probable effect the episode had on the minds of the
jurors.   It is not uncommon in the course of trials,
and especially in criminal trials, for opposing counsel
to engage in heated arguments, and at times to get
caustic and acrimonious, and it is not uncommon for
the trial court to reprimand counsel and sometimes
to discipline them in the  presence and hearing of the
jury.   And occasionally counsel are ' fined for trans-
gressing the rules of court or refusing to obey the
orders of the presiding judge.    Neither is it un-
common for counsel at times to engage in a colloquy
with the court, and by reason of their zeal be guilty of
unbecoming  conduct  or  insulting  language, but be-
cause these things occur it has not suggested itself
to courts to dismiss juries on account of them.   Jurors
expect clashes between counsel and the court.   They
look for spirited contests between counsel.   They an-
ticipate that court proceedings are going to be more
or less tempestuous, and it is these incidents that put
a keen edge on court proceedings and make them inter-
esting to the average juror.    Because bitter things
are sometimes said by counsel and because the court
finds it necessary to discipline counsel for improper
language is no sufficient reason why the jurors should
be so prejudiced against the client of either attorney
as to make it necessary to dismiss them.    While an
orderly and courteous disposition of court matters is
to be desired, the profession know, and laymen know,
that where large interests are at stake and strong and
earnest men are handling them, the rules of court and
the proprieties are not always observed, but because
this is so it would be absurd to follow every such
occurrence in court with a dismissal of the jury, on
the theory that they were thereby prejudiced against
either one of the clients.   The circumstances under
which these occurrences arise are so varied that it is
difficult to lay down any definite rule to be followed.

While much is necessarily left in such cases to the discretion of the court, we think something should appear upon the record to make it probable that a fair trial cannot be had. Before a jury is dismissed under circumstances like those in the present case some effort should be made by the trial court to ascertain what effect the episode had upon the minds of the jurors. In the present case there was no effort made to do this. In view of the constitutional rights of defendant we are persuaded that we should hold that the trial court abused its discretion in dismissing the jury.

The judgment of conviction will be reversed and the defendant discharged.

WIEST, C. J., and FELLOWS, McDONALD, MOORE, and STEERE, JJ., concurred with BIRD, J.

CLARK, J. A mistrial was properly ordered. Judgment should be affirmed.

SHARPE, J., concurred with CLARK, J.