PEOPLE *v.* ANGLIN.

1. CRIMINAL LAW—JEOPARDY.

A defendant in a criminal case cannot be in jeopardy until a jury is impaneled and sworn.

2. SAME—JEOPARDY—CONSENT TO DISCHARGE OF JURY.

A defendant is not placed in jeopardy when a jury is discharged on his motion or with his consent or acquiescence.

3. SAME—DISCHARGE OF JURY—DISAGREEMENT—MANIFEST NECESSITY.

A jury impaneled, accepted, and sworn in a criminal case cannot be discharged, unless unable to agree, except under urgent circumstances for plain and obvious causes creating some overruling or manifest necessity which, in the opinion of the court, requires its discharge to prevent the ends of justice from being defeated.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 176.

Plea of former jeopardy or of former conviction or acquittal where jury was not sworn. 12 ALR 1006.

[2, 13] 21 Am Jur 2d, Criminal Law § 192.

What constitutes accused's consent to court's discharge of jury or to grant of state's motion for mistrial which will constitute waiver of former jeopardy plea. 63 ALR2d 782.

[3, 6] 21 Am Jur 2d, Criminal Law § 194.

Plea of former jeopardy where jury discharged because of misconduct or disqualification of one or more of their number. 38 ALR 706.

[4] 21 Am Jur 2d, Criminal Law §§ 180, 195.

[5] 21 Am Jur 2d, Criminal Law § 198.

Advantage which the original trier of facts enjoyed over reviewing court from opportunity of seeing and hearing witnesses. 111 ALR 742.

[7, 8] 21 Am Jur 2d, Criminal Law §§ 180, 194, 198.

[9] 21 Am Jur 2d, Criminal Law §§ 180, 194, 195.

[10] 21 Am Jur 2d, Criminal Law § 199; 31 Am Jur, Jury § 192.

[11] 31 Am Jur, Jury § 121.

[12] 58 Am Jur, Witnesses § 611.

[14] 21 Am Jur 2d, Criminal Law § 194.

[15] 21 Am Jur 2d, Criminal Law § 223.

4. SAME—JEOPARDY—MISTRIAL—APPEAL AND ERROR—DISCRETION OF COURT.

> The application of the test of overruling or manifest necessity to prevent thwarting the ends of justice, in connection with the declaration of a mistrial in a criminal case, without the defendant's consent, or acquiescence, is a matter left to the sound discretion of the trial judge, and the appellate courts will not interfere therewith except for clear abuse of such discretion.

5. SAME—DISQUALIFICATION OF JUROR.

> Juror disqualification or misconduct, discovered after the jury has been impaneled, is best adjudged by the trial judge who has conducted an investigation rather than an appellate court, since the trial judge saw and heard the juror, could note his appearance and attitude, tone of voice, and manner of testifying when undergoing the investigation.

6. SAME—DISCHARGE OF JURY—DISCRETION OF COURT—RECORD.

> The power and the right of the trial judge to exercise his discretion in discharging a jury to prevent defeating the ends of public justice in a criminal trial is limited not only by the requirement that he may not abuse that discretion, but also by the requirement that the record adequately show the reasons and the facts on which such reasons are based.

7. SAME—MISTRIAL—MISCONDUCT OF JUROR—RUMOR—SUSPICION—FEAR OF INJUSTICE—DISCRETION OF COURT.

> It is an abuse of discretion for a trial judge to grant a mistrial and excuse the jury from rendering their verdict in a criminal case solely on the basis of rumor, suspicion, or fear that a fair and impartial trial is not certain to be the result.

8. SAME—MISTRIAL—DISQUALIFICATION OF JUROR—RECORD—PREJUDICE—DISCRETION OF COURT.

> Trial court's grant of a prosecution motion for a mistrial on the assumption that a juror, discovered during the trial to be the sheriff's brother-in-law, would be prejudiced and would have been peremptorily excused by defendants had they known of such relationship at the time the jury was selected, *held*, an abuse of discretion, when there has been no misconduct or disqualification of said juror, the record fails to disclose any investigation on the part of the trial court to determine whether said juror was actually prejudiced so as to be disqualified, and particularly where the defendants had failed to excuse such juror after being fully informed that the wife of the juror was a sister of the sheriff whose officers would be witnesses against defendants.

9. SAME—CONSENT TO MISTRIAL—DISCRETION OF COURT—TWICE IN JEOPARDY.

Trial court's erroneous grant of a mistrial and discharge of a jury, duly impaneled and sworn, precludes a second trial for the same offense under the constitutional provision prohibiting a person from being placed twice in jeopardy for the same offense, unless such action was with the consent or acquiescence of the defendant (Const 1908, art 3, § 14). .

10. SAME—ASSUMPTION OF FACTS—DISCRETION OF COURT.

Assumption by trial court, upon learning that one of the jurors in a criminal case was the brother-in-law of the sheriff, that such juror would be prejudiced against the defendants and that the remaining jurors would be prejudiced if the facts were made known to them, *held,* an abuse of discretion, where such assumptions were neither justified nor supported on the record.

11. SAME—TRIAL—EXCUSAL OF JUROR—DISCRETION OF COURT.

It was error for the trial court to limit defendants to the choice of either a mistrial or the continuance of their trial for burglary with 11 jurors, after one juror was discovered to be the sheriff's brother-in-law, since defendants were also legally entitled to the choice of continuing with the 12 jurors as initially drawn (CL 1948, § 750.110).

12. SAME—MISTRIAL—TRIAL BY 11 JURORS—ILLEGAL CONDITION— RESTRICTION ON CROSS-EXAMINATION.

Trial court's ruling that it would allow defendants' trial for burglary to continue with 11 jurors only if defendants would agree not to mention that twelfth juror was excused because discovered to be the sheriff's brother-in-law *held,* clearly error, being an illegal limitation upon cross-examination, since the subject of the removed juror may be a legitimate basis to test the credibility of officers who had testified or might testify (CL 1948, § 750.110).

13. SAME—DISMISSAL OF JURY—DISCRETION OF COURT—CONSENT TO MISTRIAL.

Excusal of juror upon finding he was a brother-in-law of the sheriff and objection by defendants to an improper condition set by the trial judge for continuing the trial with 11 jurors because the restriction improperly limited defendants in cross-examining the witnesses *held,* not to have effected a consent to, or acquiescence in a declaration of mistrial, particularly where defendants specifically objected to the discharge of the jury, made as a result of the trial judge's fear that a fair and impartial trial might not result under the circumstances.

14. SAME—JEOPARDY—DISCHARGE OF JURY—DISCRETION OF COURT.
Defendants' conviction at second trial for breaking and entering in the nighttime *held,* reversible error and defendants are ordered discharged, where defendants had first been brought to trial before a jury which was, over defendants' objections, dismissed by the trial judge, solely upon fear that an impartial trial might not occur because a juror was discovered to be the sheriff's brother-in-law, but the record discloses that said juror was not disqualified, was not guilty of misconduct, and that there was no overruling necessity for the discharge of the first jury, since defendants were thus placed in jeopardy at the first trial and could not be tried again for the same offense (Const 1908, art 2, § 14; CL 1948, § 750.110).

15. CONSTITUTIONAL LAW—CRIMINAL LAW—PUBLIC SAFETY.
It is essential, for the public safety and for the protection of accused persons, to preserve those forms of procedure provided by the Constitution and laws, and guaranteed to every citizen, even though, in doing so, some guilty parties may escape punishment for their crimes.

Appeal from Tuscola; Quinn (Timothy C.), J. Submitted Division 3 November 9, 1966, at Grand Rapids. (Docket No. 162.) Decided May 23, 1967. Rehearing denied July 13, 1967. Leave to appeal denied September 29, 1967. See 379 Mich 780.

James C. Anglin and Leonard C. Johnson were convicted of breaking and entering in the nighttime with the intent to commit larceny. Both defendants appealed. Reversed, defendants discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Epskamp,* Prosecuting Attorney, for plaintiff.

*David N. Andreychuk,* for defendants.

NEWBLATT, J. Defendants appeal their conviction of breaking and entering in the nighttime.[1] The

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305). Presently CL 1948, § 750.110, as amended by PA 1964, No 133 (Stat Ann 1965 Cum Supp § 28.305).

principal claim on appeal is that the defendants' rights not to be placed in jeopardy twice had been violated. This claim arose out of the following set of circumstances. The defendants were arrested on June 25, 1960, and subsequently brought to trial on September 27, 1960. On that date the jury panel was exhausted by peremptory challenges and the sheriff was ordered forthwith to summon eight additional qualified persons as jurors. One of these additional talesmen was Alfred Wright. On *voir dire* examination, upon being read a list of the witnesses who were to testify in the case and being asked whether he knew them, Wright indicated that he knew Herbert Beecher, the police officer who had pursued the defendants just prior to their arrest, and that his wife was some relation to Beecher. Wright was accepted as juror number 12 and the trial proceeded. After hearing the testimony of 3 witnesses and part of a fourth (Beecher), the trial was adjourned until the following morning. On the evening of September 27, 1960, the prosecutor informed the trial court that Juror Wright was the brother-in-law of the sheriff of Tuscola county. Defense counsel was informed of this fact in chambers and given two alternatives by the court: (1) the case could continue with 11 jurors, or (2) a mistrial could be declared and the jury discharged. The defendants agreed to proceed with 11 jurors. However, the court then insisted that Juror Wright be excused as quietly as possible and that no mention of his relationship to the sheriff be made before the jury. Defense counsel refused so to stipulate, stating that such information had a bearing on the credibility of the sheriff's officers who had already testified or who were to testify. Court was reconvened and a mistrial declared.

On December 8, 1960, the defendants were again brought to trial. This time the jury returned a verdict of guilty of the crime charged.

The defendants claim that they were twice put in jeopardy and this was in violation of Const 1908, art 2, § 14, now Const 1963, art 1, § 15.

The facts on this issue are deceivingly simple yet they pose such a serious question that a review of the previous decisions of the Supreme Court of this State is mandatory for resolution of the novel factual issues. The novelties will be emphasized hereafter.

The issue may be stated as follows: When and under what circumstances may a trial judge discharge a jury or order a mistrial on his own motion or on motion of the prosecutor without such trial having placed the defendant in jeopardy which would bar a retrial and conviction.

The Supreme Court has previously ruled in a number of such cases involving juror misconduct or disqualification, *People* v. *Parker* (1906), 145 Mich 488; *In re Ascher* (1902), 130 Mich 540; *People* v. *Schepps* (1925), 231 Mich 260; *People* v. *Diamond* (1925), 231 Mich 484; *People* v. *Sharp* (1910), 163 Mich 79; *People* v. *Barker* (1886), 60 Mich 277; *People* v. *Bigge* (1941), 297 Mich 58; litigant or attorney misconduct, *People* v. *Davis* (1925), 233 Mich 29; *People* v. *Bigge, supra; People* v. *Brosky* (1923), 222 Mich 651; difficulty or impossibility of continuing trial, *In re Earle* (1946), 316 Mich 295; *People* v. *Hutchings* (1904), 137 Mich 527; failure or inability of the jury to agree, *People* v. *Parker, supra; People* v. *Duncan* (1964), 373 Mich 650; and error of law by the trial judge, *People* v. *Taylor* (1898), 117 Mich 583; *People* v. *Tillard* (1947), 318 Mich 619; *People* v. *Gardner* (1886), 62 Mich 307. From these cases, certain principles are clear.

A defendant cannot be in jeopardy until a jury is impaneled and sworn. *People* v. *Tillard,* *People* v. *Taylor, People* v. *Schepps, People* v. *Barker, supra.*

When a jury is discharged on motion of the defendant or with his consent or acquiescence, he shall not be deemed to have been in jeopardy. *People* v. *Taylor, supra; People* v. *Schepps, supra; People* v. *Fochtman* (1924), 226 Mich 53; *People* v. *Gardner, supra; Raslich* v. *Bannan* (1925), 273 F2d 420.

The general rule as to whether after a discharge of a sworn jury a defendant has been in jeopardy is given in *United States* v. *Perez* (1824), 22 US (9 Wheat) 579 (6 L ed 165), where the court said:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge, and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

This has been quoted, in part, in many Michigan decisions. *Earle, Ascher, Schepps,* and *Sharp,* all previously cited. The *Perez* test of "manifest necessity" to prevent defeating the ends of public justice has been rephrased in the Michigan decisions. It is

frequently phrased in terms of "urgent circumstances for plain and obvious causes". In *Brosky* at page 654, the Court said:

"With reference to the power of courts to dismiss juries, it is observed by Ruling Case Law:

" 'American authorities generally announce the rule that the power to discharge the jury is within the sound discretion of the trial judge, and that his exercise of such discretion will not be reviewed by the appellate courts unless its clear abuse appears. The power ought, of course, to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.' 16 RCL 321."

The test since *Parker* has been phrased in terms of "overruling or manifest necessity". At page 654 of *Brosky,* it is stated:

"In the case of *People* v. *Parker,* 145 Mich 488, the rule was announced that under our Constitution (1850), art 6, § 29, a jury impaneled, accepted and sworn cannot be discharged except for inability to agree, or for some other *overruling necessity* which courts hold necessary to constitute a mistrial."

In addition to *Parker* and *Brosky,* such a test was applied in *People* v. *Jones* (1882) 48 Mich 554, *Taylor, Schepps,* and *Bigge.* In *Schepps,* at page 268 an expanded statement is made:

"Under the rule which now obtains in this jurisdiction, the accused is prima facie in jeopardy when his trial has been entered upon and progressed through selection and swearing a jury, the court then being fully organized for and committed to his trial. The court cannot thereafter through caprice or because of some irritating incident of the trial discharge the jury and call it a mistrial, without raising a bar to subsequent trial for the same offense, *People* v. *Brosky,* 222 Mich 651. While that limited and conditional power to discharge the jury is recognized

as reserved to the court for those rare cases where a manifest necessity arises or facts are discovered showing in the opinion of the court that the ends of public justice would otherwise be defeated, it should when not consented to by the defense be given careful consideration and only exercised when conditions in the nature of an emergency have risen satisfying the court that manifest necessity or the ends of justice make it imperative."

The application of the test of overruling or manifest necessity to prevent thwarting the ends of justice is left to the sound discretion of the trial judge. *Parker, Earle, Schepps, Davis, Diamond, Bigge,* and *Brosky, supra.* The appellate courts will not interfere with the exercise of that discretion except for clear abuses thereof. In dealing with cases of alleged juror disqualification or misconduct discovered after the jury has been impaneled, our Supreme Court has pointed out that the trial judge who has conducted an investigation is better able to judge the question of disqualification because he "saw and heard the juror and could note his appearance and attitude, tone of voice and manner of testifying when undergoing the investigation." *Schepps,* page 270. Similarly in *Diamond,* at page 487, the Supreme Court said:

"The trial court had the opportunity, denied to us, of seeing the parties interrogated, observing their frankness, and observing the effect of what occurred not only upon the two jurors but upon the rest of the panel."

The power and the right granted to the trial judge to exercise a sound discretion to discharge a jury to prevent defeating the ends of justice is limited not only by the requirement that he may not abuse that discretion, but also by the requirement that the record must adequately show the trial court's reasons

and the facts upon which his reasons are based.   In
*Parker,* the Supreme Court, at pages 500 and 501,
said:

"Appellate courts will not interfere with the action
of trial courts in discharging juries, where facts are
found upon which such action can be based.   But
the facts must be found and placed upon the record.
*State* v. *Wiseman,* 68 NC 203.   The court cannot
arbitrarily discharge a jury upon rumors of im-
proper conduct, or of attempts to corrupt one or
more of them.   In the *Ascher Case* the trial judge
made a specific finding of facts showing corrupt
conduct on the part of some of the jurors, an utter
disregard of the instructions of the court, and pre-
existing bias on the part of some of the jurors in
favor of the respondent contrary to their sworn
statements when examined upon the *voir dire,* and
that an officer in charge of the jury was made drunk
by some of the jurors.   Under such conditions the
accused had not been in jeopardy.   No such state of
facts is found here.   No juror is found to be dis-
qualified; neither is the entire panel found to be
tainted.   Rumor and suspicion are not sufficient;
neither is the fear on the part of the trial judge 'that
a fair and impartial trial is not certain to be the
result.' "

See, also, *Jones, Ascher, Davis, Sharp, Bigge,* and
*Brosky, supra.*

Turning now to the record in the instant case to
determine the propriety of the discharge of the jury
in the light of the foregoing, we find the only basis
for discharge was the fact that Juror Wright was the
sheriff's brother-in-law.   The record of the *voir dire*
shows that Wright was not asked the traditional
question of whether any members of his family were
now or had ever been engaged in law-enforcement
activities.   The only pertinent question was "Are
you presently engaged in any type of law enforce-

ment?" Wright responded "No". When asked whether he had ever been, he answered that he was a former justice of the peace. He was also asked whether he had heard the names of the witnesses which the judge had read to the jury and he answered that he had. In an interrogation of Wright after the trial court became aware that he was the sheriff's brother-in-law (which interrogation took place after a chambers conference between court and counsel on this subject), the juror was asked why he had not disclosed that his wife was the sister of the sheriff. The juror answered: "You never mentioned his name. You had the four of them down there and you asked me if I knew any of them." The trial judge then said: "No, I mean prior to that." Juror Wright responded "You never asked me." The record supports the juror's answer. In discharging the jury, the trial court stated:

"I do not mean to infer there is any unfairness or partiality on the part of Mr. Wright because he is the brother-in-law of the sheriff, but here is the situation * * *."

The trial court further stated:

"The mere fact that he is a brother-in-law of the sheriff does not disqualify him."

This record brings the case directly under the ruling in *Parker* where a jury was discharged without any showing of any specific act which would establish a disqualification and there was no showing of misconduct of any type by the juror. The previous cases of jury discharge for misconduct or disqualification of a juror dealt with such circumstances as a juror's intentional concealment of a relationship to the defendant, a manifest bias on the juror's part, attempts by a juror to improperly influence other jurors, a juror's unauthorized conversation with

nonjurors while sequestered and a juror's furnishing intoxicants to the court officer (*Ascher*); a juror's manifest prejudice against the prosecution for being sequestered (*Schepps*); two jurors having lunch at the same table with the defendant's daughter (*Diamond*); a juror's public statement before all the evidence had been presented that his mind was made up as to the case (*Sharp*); a juror being an alien and therefore ineligible to be a juror (*Barker*); and a juror at a recess talking to the defendant (*Bigge*).

Here the record does not disclose any investigation on the part of the trial court to determine whether or not the juror was prejudiced so as to be disqualified. There being absolutely no misconduct or disqualification of the juror and hence no basis to discharge the jury except an unwarranted assumption that because the juror was the sheriff's brother-in-law, he would be prejudiced against the defendant, the ordering of a mistrial on the trial judge's own motion or on motion of the prosecutor was an abuse of discretion and must be held to be jeopardy barring the subsequent trial unless consented to or acquiesced in by the defendants. It is to be noted that the circumstances of this case present the peculiar situation of Juror Wright admitting that officer Beecher, a witness in the case, was a relative of his wife. This information was known by the defense counsel and yet he did not challenge the juror. Thus the trial court's assumption that the defense would have challenged the juror had he known of his relationship with the sheriff does not necessarily follow. This must be the ruling even though the trial court clearly was trying to be fair to the defendants as demonstrated by his statement to the jury at the time he ordered the discharge:

"So in my opinion, the situation we are faced with would deny these defendants the right to a fair trial."

And so finally attention must be directed to the question of whether the defendants acquiesced in or consented to the discharge. From the record it appears that the trial court, after discovering the relationship of the juror to the sheriff and before the discharge of the jury, conferred with counsel in chambers and presented defendants' counsel with two alternatives; *i.e.,* proceed with 11 jurors or have the jury discharged and a mistrial ordered. After consultation with his clients, defendants' counsel indicated he would continue with 11. The court then attempted to elicit an agreement from defense counsel that he would refrain from bringing the facts surrounding the dismissal of the juror before the jury. Defense counsel refused so to stipulate and the trial judge then ordered the discharge and mistrial. The trial court stated:

"I think also to preserve the record, I will indicate on it the reason I granted Mr. Epskamp's (prosecutor) request for a mistrial in spite of the fact defendants were willing to proceed with 11 jurors is the fact we would then be in a position where I feel Mr. Williams (defendants' counsel) could question, and question vigorously, the police officers with respect to this very situation, it materially going to the credibility of those police officers if such a situation was permitted to exist."

It is apparent that the trial court, in an effort to be fair to the defendants, made two inferences or assumptions: (1) that the juror would be prejudiced against the defendants; and (2) if the facts were made known to the remaining jurors, they could not be impartial. These assumptions were neither justified nor supported on the record. In addition to the two choices given, the law required a third choice,

*i.e.,* proceeding with the jury as drawn with the 12 jurors. Furthermore, when defendants sought to proceed on the first choice of continuing with 11 jurors, the trial court sought to impose an illegal condition—that defendants' counsel not cross-examine on the subject of the removed juror—an area of inquiry which the trial court acknowledged, as shown above, as being admissible as going to the credibility of the police officers. The trial court cannot ask either prosecution or defense to forego a valid area of examination or cross-examination as a condition for the selection of one of the two choices given. If the area of examination went to the credibility of the officers, it would be admissible before the 11 jurors, the 12 jurors or even a subsequently selected jury.

Where only two choices were presented to defense counsel instead of the legally required three and where one of the two choices presented was accompanied by a condition which the court had no right to impose, it cannot be said that the defendants' counsel consented to or acquiesced in the discharge of the jury. As a matter of fact, defense counsel objected to the discharge at the time it was ordered. It appears then that the jury was discharged not because of the disqualification of a juror, but because of the trial judge's fear that a fair trial might not result, coupled with defense counsel's refusal to acquiesce in a limitation on proofs desired by the judge, which limitation the judge had no right to impose.

It is our opinion that the trial court in discharging the jury and declaring a mistrial in these circumstances acted as a result of fear that a fair and impartial trial was not certain to result. As the Supreme Court held in *People* v. *Parker, supra,* this fear standing alone is not a sufficient ground for the granting of a mistrial. The record discloses no overruling necessity for a discharge of the jury. Hence the defendants were placed in jeopardy at the time of the first trial.

Having quoted extensively from *Parker*, one last quotation would be appropriate. It was said at page 501:

"While it is unfortunate that the respondent shall escape punishment for his crime, it is essential, for the public safety, and for the protection of accused persons, to preserve those forms of procedure provided by the Constitution and the laws, and guaranteed to every citizen."

Having so ruled, it is unnecessary to consider the additional claims of the appellants.

The convictions must be reversed and the defendants discharged.

McGREGOR, P. J., and BURNS, J., concurred.