NUGENT *vs*. THE STATE.

1. That a jury, after being impanneled and sworn, *in* a crimi-
nal case, are dismissed, *in consequence of the sickness of the
presiding judge,* is no cause for the discharge of the prisoner,
from a trial, before a second jury, for the same offence.

In this case, an indictment having been preferred
against Nugent, for the murder of one Caple—a spe-
cial term of Dallas Circuit Court was ordered, for his
trial.    At the time appointed the Court was duly or-
ganised, and the prisoner was arraigned, and plead
not guilty.    A jury was then impanneled, and sworn
to try the issue between the State and the prisoner;
and the Court adjourned, until the following day.

The record then recited, that on the next day, the
State was present by counsel, and also the prisoner;
but the presiding judge was so extremely indisposed,
as to render it impossible for him to preside; and it
was, therefore, ordered, that the jury be discharged,
and they were discharged, accordingly.

At the ensuing regular term of the Circuit Court,
of Dallas, Nugent was again put upon his trial; a
jury impanneled and sworn; and a verdict of man-
slaughter awarded against him.

When called to the bar, for sentence, the counsel
for Nugent, moved for his discharge, on the ground
of the discharge of the first jury: but the Court
overruled the motion, and reserved it for the opinion
of this Court.

*Ellis*, for the prisoner—*Attorney General, contra.*

On the part of the prisoner, it was contended—

1st. That, under the tenth, eleventh and thirteenth sections of the declaration of rights, in the constitution, the prisoner was entitled to his discharge. This, it was said, was an indictment for a capital case; and the prisoner could not be twice put in jeopardy of life. In this case, the jury were discharged, in violation of the prisoner's rights: and, although the rule, in relation to the power of Courts, to discharge a jury, has been relaxed, in some cases, this relaxation has never extended to felony. This, however, has been limited, alone, to cases of imperious necessity. It has been exercised in cases where a juror has suddenly become ill; where the prisoner becomes ill; or where, from circumstances, a *benefit* is to accrue to the prisoner. Here it was obviously to his injury: he was not consulted—it was the volition of the judge; and, by *his act*, the prisoner was deprived of a jury, whom he had chosen, to pass upon his guilt. It is shewn, by the record, here, that all the power exercised, was left entirely to the judge, himself; and was concerning himself. No case, ever decided, has extended the right of the Court thus far. Were it thus given, the most injurious consequences would ensue. It would be throwing upon the discretion of the judge, the power of discharging a juror; and which he might do, through malevolence, or other bad motive. In every case, where this matter has arose, a power existed, to judge of the necessity: here, there was no power, but the opinion and will of the presiding officer.

This case, if the prisoner be not acquitted, will form a new exception to this restricted rule. And the Courts should hesitate, in cases of such impor-

4 s & p.       10

tance, before establishing exceptions.—6 Serg't & Rawle, 578.

2ndly. We do not know how this entry came into the record : it is to be presumed, that the judge was not there, to order or make it; as, if the indisposition was of the sudden and imminent character, contemplated in the rule, he could noth ave possessed the faculty, necessary. It would, then, be an entry, *out of Court*, by which the prisoner would be essentially affected, in a capital case. In this way, a device might be used, to pack a jury.

For the State, it was said—that the declaration of rights was not compromitted; as a prisoner could not be considered as put in jeopardy, where not tried. *The State* vs. *Phil*, in this Court. It has, likewise, been decided, that the rule may be extended to felony, as well as misdemeanors.—3 Camp. 207, 209.

In this case, the power exercised, arose from necessity. It was an event that could not be foreseen, or provided against. Wherever the rule has been allowed, it has been from urgent necessity. This was clearly so; and the law is well settled, and meets this particular case.

Lipscomb, C. J.—This case comes before us, on a point reserved for our consideration, by the judge of the Circuit Court of the county of Dallas. The prisoner was found guilty of the crime of manslaughter; and when placed at the bar to receive the sentence of the Court, by his counsel, moved to be discharged, on the ground, that a jury had been previously impanneled and sworn, to pass upon his trial, upon the same indictment, which jury had been

discharged from rendering their verdict, by the then presiding judge, contrary to the consent of the prisoner. The record relied on in support of this motion, showed, that on the 15th day of May, 1832, an order was made by the Hon. H. G. Perry, judge of the second Judicial Circuit, requiring a special term to be holden in the county of Dallas, on the 18th day of June, for the trial of the said Nugent, for the crime with which he stood charged.

On the day appointed, the Court was duly organized—the Hon. H. G. Perry presiding as Judge—the prisoner was arraigned, and plead not guilty to the indictment—and a jury was impanneled, tried, elected and sworn, well and truly the issue to try, &c.—and the Court then adjourned till the next day, at which time the Court met, and the following entry was made of record : " this day came Jesse Beene, solicitor, who prosecutes for the State, and John Nugent, in his own proper person, and the jury aforesaid ; and the Hon. Horatio G. Perry, judge presiding, being so extremely indisposed, as to render it impossible for him to proceed with the trial, it is therefore ordered, that the jury be discharged," &c. The Court below overruled the motion, and passed sentence on the prisoner ; but considering the question arising on the motion, to be novel and difficult, reserved it for the opinion and judgment of this Court.

Two points have been made by the counsel for the prisoner, in opposition to the judgment of the Court below, and on which they relied, for the reversal of the judgment.

The 1st. That no person shall, for the same offence, be twice put in jeopardy of life or limb.

And 2dly. That according to the course of the common law, the discharge of the first jury amounted, in law, to a discharge of the prisoner.

X The first point was not pressed on us, because the counsel for the prisoner believed it embraced in the opinion of this Court, under its old organization, in the case of *The State* vs. *Coleman Williams.* In that case, the ground was fully considered, after it had been very ably argued, by eminent counsel, and the Court overruled the objection. That opinion is well sustained, by many previously adjudged cases, of high authority;) and by none more clearly and distinctly, than by the opinion of Chief Justice *Spencer*, on the same point, in *The People* vs. *Goodwin.* We believe the doctrine on this point has been settled on sound principles, and we are not disposed to disturb it.

The second point has been urged with earnestness and ability, by the prisoner's counsel. He insists, that it is a rule of the common law, that a discharge of the jury, after they have been sworn, amounts to a discharge of the prisoner—and that he cannot be again put on his trial for the same offence; that this rule was inflexible, and admitted of no exceptions, until the trial of the Kinlocks, in 1746, under a special commission for the trial of the Rebels of 1745; that the exception then recognised, and those since made, will not embrace the case of a discharge of the jury, on the ground of the sickness of the judge.

Whatever may have formerly been the unity of decisions in support of this rule, exceptions to it, have been frequently made by a train of decisions, from the case of *The People* vs. *Denton,*[a] in 1801, in the State of New York, down to *The Peo-*

*2 John. C. 275.*

*ple* vs. *Goodwin*, in 1820.[a] These cases have sup- [a] 18 John. R. 188. plied different exceptions to the rule, but they have been all asserted and sustained on one and the same principle, the controller of all human rules, necessity. The same principle has been sanctioned by Judge *Story*, in *The United States* vs. *Coolidge*;[b] and [b] 2 Gal. 364 by the Supreme Court of Massachusetts, in *The Commonwealth* vs. *Bowden*;[c] nor has this principle [c] 9 Massa. 494. been sanctioned alone, by the Courts of our own country, but it has been equally so, by English decisions In *The People* vs. *Olcott*,[d] the jury hav- [d] 2 John. C. 301. ing been out from eight o'clock, in the evening, until near two, the next day, and having in the mean time come into Court two or three times, for advice, declared, there was no prospect of their agreeing in a verdict; were discharged, without the prisoner's consent. One of the questions propounded to that eminent jurist, Judge *Kent*, was, whether, the discharge of the jury entitled the defendant to be discharged, or whether he could be re-tried?

After examining and commenting on all the authorities, the position of the learned Judge was this— "if the Court are satisfied, that the jury have made long and unavailing efforts to agree; that they are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity, and requires an interference; that all the authorities admit, that when any juror becomes mentally disabled, by sickness or intoxication, it is proper to discharge the jury; and whether the mental inability be produced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same." On a similar ground, the jury were discharged by the Court, in *The Commonwealth* vs.

*Bowden.* So in the case of *The People* vs. *Goodwin,* it had been fully and fairly ascertained, that the jury could not agree. In the last case, the principle was most fully sanctioned, by the great learning and judicial reputation of Chief Justice *Spencer.* In *The United States* vs. *Coolidge,* a witness refused to be sworn, and was imprisoned for a contempt; the trial was suspended during the imprisonment of the witness. In *The King* vs. *Edwards,*[a] whilst the prosecutor was giving his evidence, one of the jurors fell down in a fit; the jury was discharged, and a new jury sworn, and the prisoner convicted. The point argued before all the Judges in England, except *Mansfield* and *Lawrence,* was, whether the prisoner could be tried, after the discharge of the jury, without consent. The Judges, without hearing the counsel for the crown, said, that it had been decided in so many cases, that it was now the settled law of the country; and gave judgment against the prisoner. Such, too, was the decision in Ann Scalbert's case.[b]

In *The King* vs *Stevenson,*[c] the prisoner fell down, in a fit, during the trial, and the jury was discharged; and, upon his recovering, he was tried, and convicted, by another jury.

See the opinion of Chief Justice, *Spencer,* in Goodwin's case.

In these cases, the exceptions were different, but the principle was the same, in each. That it was a case of necessity, over which the Court could exercise no control; and that, therefore, the ends of public justice required a modification of the rules. The rule should not be capriciously departed from : the necessity should always be urgent and apparent.——

[a] 4 Taunt. 309.

[b] 2 Leach C. C. 706.

[c] 2 Leach C. C. 618.

But, whatever should be the ground of the discharge of the jury, it should be always on this self-same principle, of necessity; otherwise, it would seem, that the prisoner should not be again put upon his trial. See *The People* vs. *Ward & Barrett.* And, [1 John. R. 66] although the right to discharge a jury, on a proper occasion, is clearly established, it should be exercised cautiously and with great delicacy; but this forbearance should never be extended to a sickly timidity.

I recollect well, that several years ago, when on the Circuit Court bench, a case occurred before me, where I now believe, that my over-nicety, on this subject, occasioned great injustice, and actual oppression to the jury. I had them kept together about three days before they were discharged, when, after the first eight or ten hours, they gave me the most positive assurance, that all their efforts, to agree in a verdict, were fruitless and hopeless.

· I am disposed to think, judges would be more apt to err, in this way, than by too rashly discharging the jury.

But let us now endeavor to apply the principle we have been examining, to the present case. All the exceptions we have noticed, were occasioned by the jury, the witness, or the prisoner. Is there, however, in reason, a distinction in principle, if the judge should be taken suddenly ill, and unable to progress with the trial. Suppose, that after commencing the trial, he had died suddenly, would not the same principle of necessity claim the case, as another exception to the rule? It seems to me, that it most certainly would. His inability from sickness, can not alter the result. ·

The principle once settled, of necessity, we will

only have to inquire, if the exception is embraced by it; and although the progeny may be numerous, it seems to me, that there will never be much difficulty in the application of the rule. It will only be, to inquire whether the necessity actually existed, for discharging the jury, without their having agreed in a verdict.

I agree, that the departure from the rule, must be based on that necessity----and the generality of the rule is admitted; but I most cordially assent to the opinion of *Sir Michael Foster*, " that all general rules, touching the administration of justice, must be so understood, as to be made consistent with the fundamental principles of justice; and, consequently, all cases, where a strict adherence to the rule would clash with those fundamental principles, are to be considered as so many exceptions to it."[a]

[a] Foster'sC L. 38.

That the present case is an exception to the general rule, contended for, I can entertain no doubt. It results from a principle of the same necessity, acknowledged in all the cases.

The judgment must, therefore, be affirmed.