PEOPLE *v.* PARKER.

1. CRIMINAL LAW—SECOND JEOPARDY — CONSTITUTIONAL LAW— DISCHARGING JURY—WHEN AUTHORIZED.

Under our Constitution (section 29, article 6), a jury impaneled, accepted, and sworn cannot be discharged except for inability to agree, or for some other overruling necessity, which courts hold to constitute a mistrial.

2. SAME—DISQUALIFICATION OF JUROR—SUFFICIENCY.

The court may, at any time during the progress of the trial, arrest it to determine the legal qualifications of a juror, and if it be ascertained upon an examination that a juror was disqualified when sworn and accepted, or by subsequent conduct has become disqualified, the overruling necessity essential to constitute a mistrial appears, and the court may discharge the jury without prejudice to a new trial.

3. SAME—APPEAL—REVIEW—DISCRETION OF COURT.

Appellate courts will not interfere with the action of trial courts in discharging juries, where facts are found upon which such action can be based; but the facts must be found and placed upon the record, and the court cannot arbitrarily discharge a jury upon mere rumors of improper conduct, or of attempts to corrupt one or more of them.

4. SAME—JEOPARDY—DISCHARGE OF JURY.

A jury having been accepted, impaneled, and sworn, and witnesses examined in a criminal case, the court suspended the

trial, and after an ex parte investigation, in which neither the defendant nor his counsel were permitted to take part, discharged the jury from further consideration of the case, though no juror was found to be disqualified, nor was the entire panel found to be tainted. *Held*, that the accused was in jeopardy, and, in the absence of a finding of any legal objection to the jury, was entitled to a verdict at their hands, preventing his subsequent trial before another jury.

5. SAME.

After the case has been submitted to the jury, it is the duty of the court not to discharge them so long as there is a reasonable probability that they can agree, though the court is justified in accepting their statement that they cannot agree as proper evidence in determining that question.

Error to recorder's court of Detroit; Phelan, J. Submitted April 12, 1906. (Docket No. 60.) Decided September 20, 1906.

George W. Parker was convicted of manslaughter, and sentenced to imprisonment for not less than nine, and not more than ten, years in the State prison at Jackson. Reversed, and respondent discharged.

The respondent, under an information charging murder, was convicted of manslaughter. A jury was duly impaneled, accepted, sworn, and placed in charge of officers of the court, March 16, 1904, and the case adjourned to the following day. The trial was again adjourned to the 18th. On that day the presiding judge announced that he had discovered that one of the jurors was related to the defendant within the ninth degree, and that his attention had been called to another juror, and he had concluded to permit the prosecuting attorney to reopen the case, re-examine the two jurors, and go back to his challenges. The two jurors were then examined and discharged, and talesmen summoned to take their places. Another of the original jurors was then peremptorily challenged by the people. On March 21st the jury was impaneled and sworn, testimony taken, arguments had, and the case submitted

to the jury. The jury retired at 5:38 p. m. to consider their verdict. At 9:50 p. m. the presiding judge on his own motion summoned the jury into the court-room, whereupon the following occurred:

"Gentlemen of the jury, I sent for you to ask if you have agreed upon a verdict?

"*The Foreman:* We could not agree, your honor, so far.

"*The Court:* Is it a question of fact, or is it a question of law upon which you are unable to agree?

"*The Foreman:* What I understand, it is a question of fact; the same as we had before.

"*The Court:* You have had this case with you now four hours and twenty minutes. Is that right, Mr. Clerk?

"*The Clerk:* Yes, your honor.

"*The Court:* Immediately after the arguments of counsel and charge of the court; and you say, Mr. Foreman, and you speak for your associates on the panel, that you are unable to agree upon the facts.

"*The Foreman:* So far as that, your honor.

"*The Court:* You may enter an order, Mr. Clerk, at this time, that the jury has had the consideration of this case since 5:20.

"*The Clerk:* 5:40, your honor.

"*The Court:* And it is now 10 o'clock, and up to the present time you have been unable to agree?

"*The Foreman:* Yes, your honor.

"*The Court:* And you say it is a question of fact?

"*The Foreman:* Yes.

"*The Court:* And it is not a question of law?

"*The Foreman:* Not so far as I can see into it.

"*The Court:* Being a question of fact, I cannot enlighten you. If it was a question of law, I would be justified and authorized in giving you further instructions, but inasmuch as it is a question of fact—and you have given the deliberations your best thought?

"*The Foreman:* Yes, your honor.

"*The Court:* And you inform me that you are unable to agree?

"*The Foreman:* So far.

"*The Court:* Enter an order, Mr. Clerk, that the jury in this case is discharged from its further consideration, and the defendant remanded to the county jail.

"*Mr. Dohany:* I would like to have your honor ask the jury if they think there is a prospect of them agreeing if they are sent back?

"*The Court:* No, sir, I will not.

"*Mr. Dohany:* I take exception to the court's order.

"*The Court:* Very well; you may notify the prosecuting attorney, Mr. Clerk, that this case will proceed Monday morning, or as soon thereafter as counsel in the case will be ready. * * *"

Later the court said:

"I find that the jurors in this case were unable to agree as to what the facts of the case are, and, in my opinion, thinking there was no likelihood of them agreeing, I entered an order for their discharge."

On April 7th, following, another jury was impaneled and duly sworn. The people rested their case, and considerable testimony was introduced on behalf of the defendant. These proceedings occupied from April 7th to April 13th. At the opening of the court on the latter day the presiding judge made the following statement:

"Take this statement coming from the court this morning, Mr. Reporter; that in the interests of the public justice, the jury being absent that have been impaneled to try this case, the court is satisfied that the Parker Case should rest here until the court is satisfied, from a further examination, that he has caused to be made and search to be made for the man who it is charged as having made statements that reflect upon the present panel that are now engaged in the trial of George W. Parker. There shall be no star chamber procedure about this. This man will be brought in and will be examined under the instructions of the court by the attorney whom the court has selected, Mr. Pound, president of the Wayne bar association. I will state for the counsel's benefit that I have the statement under oath of two men who charge the ex-talesman, an ex-talesman, with having made the statements which they have testified to, and which is a serious reflection upon the manhood and integrity of the members of the present panel, now engaged upon the trial of George W. Parker. If the statement had been against the defendant, that the people's interests were being worked, and a prejudice built up against the defendant in the jury, it un-

questionably would have been the duty of the court to take prompt action, and the court believes it is his bounden duty, where the prejudice is alleged to have been built up against the people, to act promptly. I have acted promptly.' Within four hours after the information was laid before me, I had the services of a member of the bar to represent the court, independent of counsel in the case. I think now that before we go any further we should give the jurors who have been charged by this man an opportunity to vindicate their manhood, and, if the court is not satisfied that their statements are true, then the court will· have no hesitancy in discharging the jury and calling another one, until such time as this case can be tried on the evidence in the court, and not from outside influence."

From April 13th to April 18th no further proceedings in the trial were had, and the court was occupied in hearing contempt proceedings against an ex-talesman, and the jury were kept in the custody of the officers. On Monday, April 18th, 1904, the prosecuting attorney and counsel for the defendant and a quorum of the board of jury commissioners being in court, the following took place:

"*The Court:* I want to ask the prosecuting attorney at this time if he has any statement that he desires to make to the court as to why the court should not enter at this time an order for the drawing of talesmen to the number of 100 to be placed in the box, independent of those names that are now in there, and which have received the attention of this court by being drawn, examined, challenged, and otherwise, in the former trials had in this matter?

"*Mr. Hunt:* No, your honor, I have no objection.

"*The Court:* The clerk of the court informs me that there are perhaps 200 names in the box at this time, names of jurors that were placed there at the beginning of the fiscal year by the jury commission, and which have been examined in different cases that have been tried in this court. And that upon the last trial of this defendant (referring now to the defendant Parker) an order was made by this court, drawing 50 talesmen, and that there were only 25 names in the box; that a jury was secured from 22 of that 25. Therefore the names that are now in the box—upwards of 200—have been all examined, whether in this case

or in other cases; I believe in this case, as the record will show. Now, counsel understands my question, does he?

"*Mr. Dohany:* Yes, your honor.

"*The Court:* What has counsel to say?

"*Mr. Dohany:* If I understand your honor correctly, there are 200 names now in the jury box that have been drawn out and the respective jurors examined, but they have been either excused by the court or challenged by counsel, either for the people or the defendant. Is that true?

"*The Court:* As far as this court has knowledge.

"*Mr. Dohany:* Now what is the question the court desires to ask?

"*The Court:* Whether there are any objections at this time on the part of counsel for the defendant in regard to the question asked by the court of Mr. Hunt, the prosecuting attorney, if he has any objection at this time to the court ordering the jury commission to draw 100 names?

"*Mr. Dohany:* From the box?

"*The Court:* Oh, no; to be placed in the box.

"*Mr. Dohany:* What is to be done with those hundred names?

"*The Court:* To be placed in the box.

"*Mr. Dohany:* What for?

"*The Court:* For the trial of George W. Parker.

"*Mr. Dohany:* If I am not misinformed, the trial of George W. Parker is now in progress. We have a jury of 12 men sworn in the case, and that jury has not yet been discharged. I may have some difficulty in answering your honor's question for that reason.

"*The Court:* The court can assure the counsel that the case of George W. Parker will not be terminated with the present panel.

"*Mr. Dohany:* That is the first time that information has come to me from your honor.

"*The Court:* You have it now. It is on the record. I want to ask the counsel, now, what he has to say, because there is no information that this court bases its action upon that is not in that record. Everything has been done open and above board; there has been no advantage taken either of the defendant or of the people in this matter. It is too serious a matter to consider other than in open court.

"*Mr. Dohany:* If the court please, I cannot surrender any of my client's rights, and I certainly would object to the drawing of another jury in the case.

" *The Court:* That is why I call attention of counsel so that I may have his objections.

" *Mr. Dohany:* At this time I am not familiar with the records, or at least all the reasons, that your honor may have for the discharge of the present jury. So I would object to the proceedings had for the purposes of the record.

" *The Court:* Note an exception for the counsel for the defendant.

" The court then addressed the jury commissioners and entered an order that they return to this court Wednesday, April 20, 1904, 'the names of 100 citizens, from which we will proceed to secure a jury in the case of the People v. George W. Parker, arraigned on an information for murder.'

" *The Court:* Mr. Clerk, you may enter the further order that it appears to this court, from matters brought to his attention during the past week, that it was absolutely necessary for the welfare of justice—and, as I view that term, it means justice to the people and to the defendant in every criminal accusation—that the names that are now in the present box, deposited at the beginning of the fiscal year, and which have been drawn out from time to time, under the order of the court and the jury commission, in several matters—murder trials that have been before the courts for determination—be ordered taken from the box and destroyed; and that a new list of names ordered by the court of the jury commission be placed in the box in their stead. Instead of 100 names, you may make it 150, at this time, because there are many of the names that are now in the box of jurors that have never been found by the sheriff, and many have been excused for sickness. It is thought best at this time, in the interest of this community, and all concerned, that the names of those now in the box be destroyed."

The order was entered.

On the same day, at 7:30 o'clock p. m., the defendant being present, the jury in this cause was brought into the court-room, and the following took place:

" *The Court:* Gentlemen of the jury, in reference to the delay in the procedure of the trial of this case and the absence of taking further testimony or proceeding with the arguments of counsel, the court now here deems that

it is but right that you should be apprised of the following facts:

"In reference to the matter of the condition of affairs that presents itself to this court in the case now on trial, of the people of the State of Michigan v. George W. Parker, upon an information charging murder; it having been brought to the attention of this court by sworn testimony duly presented to this court, and, in part, at least, filed therein, and the rest having been taken before the stenographer, but within the hearing of the judge of this court, that certain suspicious circumstances were in existence which reflected seriously upon the integrity of you, gentlemen of the jury, as jurors on the trial of this case in this court, and which charges, in the judgment of this court, warranted an immediate investigation of what had actually taken place, not only as a prudent measure, but under the circumstances of their occurrence in the mind of the court, an absolute necessity to the due administration of justice.

"And this court, having, upon the filing of proper affidavits, entered upon an investigation of the matters alleged in connection with the said jury having been tampered with, and in reference to the details of the same, which investigation has certainly disclosed to this court a state of facts that was heretofore unheard of by him, and which this court has no hesitation in announcing is entirely unsatisfactory to the administration of justice in this court; and while no direct proof of wrong-doing directly reflecting upon this jury or any individual member of it, has been presented to this court in sufficient volume to satisfy this court that said wrong had been actually perpetrated or committed, and perhaps it could not well be without an individual trial of the jurors upon this panel and their examination on oath and without counsel, whereby an undue advantage might be taken of them, yet the knowledge that the court has received is such; he deeming it improper to make this investigation of the individual jurors while said jury are still charged with the trial of the issue in this case, yet still it has prompted this court to still further investigations in connection with this case, some of which are now pending before this court, and undetermined.

"Additional inquiry having been made, and it appearing that, either through inadvertence or from some other reason, certain of the answers given by some of the jurors

in this case on their examinations upon their voir dire were incorrect, and that they had at least read of and discussed this case before being called as jurors to a greater extent than their examination discloses; and it also appearing beyond question to this court that certain persons representing both the State and the defense, or, at least, persons that were interested in the progress of the respective sides of this case, have seen fit to almost immediately go, after the provisional swearing in of the jurors in this case, to the households and the families of these men who have been drafted to do jury duty in the case, also since they have been impaneled and sworn, this jury, who, as a whole, this court is satisfied are at least an average body of men in intelligence and in honesty and in ability, still it being made to appear to this court that these parties before referred to have attempted to impress upon the relatives of the jurors their respective views and to a certain extent to sway them upon and as to the merits of this case; and it being within the knowledge of this court that the wives and near relatives, and other persons not so closely connected with the individual jurors, but still their relatives have been permitted to visit the jurymen impaneled in this case without surveillance, and inasmuch as these parties have had access to the individual jurors under the general order of this court made to that effect, and the condition of affairs existing in this case and apparent to this court being such that the opportunity, at least, has been presented for communication and possible corruption; also that a proceeding has been had in this court wherein a conviction has been had and summary punishment has been inflicted upon a party adjudged to have been guilty of misconduct in this case, and that said offense was such and the other attempts that have come to the knowledge of this court are of such a character that in the mind of the court there is serious doubt but that the rights of either the respondent or the State in this case have been seriously prejudiced; and this court being so in doubt, and also being uninformed but what some other improper overtures may have been made to the individual member or members of this jury of which he had not absolute proof, but has grave suspicion of; and this court not deeming it to be wise or proper to enter into an investigation of this jury, now and at this present time, while acting together as a sworn jury in this case, and, as a consequence which

must follow, to place the individual jurors upon trial before this court as having been improperly approached and influenced; and this court being of the opinion that all the circumstances of this case being taken together, namely, the unheard-of proceedings that have been shown to have been adopted in this court and cause by the parties thereto, that it is for the interests of justice, as well for the defendant as the people of the State of Michigan, and I say again, for the interests of all parties concerned in this case, that this jury which is in, perhaps through no fault of the individual members or a great majority thereof, yet still it is a questionable and peculiar position, and a position to warrant a searching investigation into their conduct, or at least of certain members thereof, an investigation which this court does not deem it proper to be made at this time while they are jurors and in the active discharge of their duties as such. And the tendency possibly being to construe such action, if taken in the absence of a conviction, of misconduct upon the jurors' part, into an attempted coercion as to a verdict on the one hand, or upon the other to possibly prejudice the rights of one or other of the parties to this cause:

"Therefore, in view of the situation in this case, this court feeling and finding as it does the foregoing to be the situation and the fact, this court has decided, being of the opinion that above all other things that a fair and impartial trial in this case, which is the right of the defendant as well as of the people, is not certain to be the result thereof, and that the result whichever way this case may now be determined by this jury may be and cannot well help but being questioned, and it being an elementary principle of law that in this State every person is entitled, not only under the Constitution and laws to the fairest and most impartial trial as a matter of right, but that it is a debt due to natural justice itself; and this court being so impressed and so believing, has resolved, although greatly regretting the necessity of his action, to discharge you gentlemen of the jury from the further consideration of this case. It being the court's desire to have all trials in the court over which he presides so conducted that whatever the result, or whatever the verdict may be which is rendered in any cause therein pending, there can be no possible question as to its having been procured by undue or improper motive, or by the influence of any coercion or attempted coercion as the result of any wrong-

doing whatsoever, or of anything but a deliberate, fair, and honest judgment of the 12 honest men who have been duly tried and sworn to try the case intrusted to them, and who have deliberated thereon and fairly weighed the case, and concluded without bias or interference what verdict justice demands shall be awarded in the particular case before them; and so, being apprised of their duty, do, as good citizens, honestly discharge it.

"Gentlemen of the jury, you are hereby discharged from the further consideration of this case, and the clerk of the court will enter the order. That will be all, gentlemen."

The court thereupon entered the following order:

"The court, Judge Phelan, having, on the 13th inst., entered upon an investigation, based upon the affidavits of Alfred F. Routhier, George Hanley, John R. Barlow, and William F. Giefel, filed herein, which investigation was held privately by the court, and the court finding therefrom, after due and careful deliberation, that the several persons sworn and sitting as jurors in this cause, have not all the necessary statutory qualifications required of jurors, for service in this court, that he doubts the competency of the persons sitting herein to further serve, for the reason that he believes, beyond question, that several of said persons so sworn have been the recipient of improper overtures by parties interested in this cause; that it is the duty of the court to further continue such investigation as aforesaid entered into, and that while the jury are impaneled and sitting herein, it is impossible to continue such investigation as aforesaid, and do justice to the parties to this cause as well as to the court and jury. Thereupon it is ordered by the court, said defendant being present and accompanied by his counsel, that the persons sworn as jurors herein be discharged from further consideration of this case."

Another jury was then impaneled, resulting in a verdict of manslaughter as above stated. To these rulings of the court counsel for the defendant duly objected and excepted, and entered pleas of autrefois acquit.

*Charles T. Wilkins*, for appellant.

*Ormond F. Hunt*, Prosecuting Attorney, and *Walter M. Trevor*, Assistant Prosecuting Attorney, for the people.

GRANT, J. (*after stating the facts*).   The gravest and most important question in the case arises upon the action of the court in discharging the third jury, after the people had rested their case and the respondent had entered upon his defense.   The record discloses no specific acts which showed a disqualification of any juror.   In discharging the jury the presiding judge stated that "no direct proof of any wrong-doing had been presented to the court in sufficient volume to satisfy the court that any wrong had been actually perpetrated."   He also stated to the jury that they were an average body of men in intelligence, honesty, and ability.   No jurors were examined as to any misconduct, and nothing appears upon the record tending to show any misconduct upon their part. The record shows only the statement of the presiding judge, based on an ex parte investigation, in which it appears that neither the defendant nor his counsel were permitted to take any part, and the jurors were allowed no opportunity to defend themselves from any charge. Even under the language of the Constitution of Michigan (article 6, § 29), which is different from that of the Constitution of the United States and many other States upon the question of jeopardy, a jury impaneled, accepted, and sworn cannot be discharged except for inability to agree, or for some other overruling necessity, which courts hold to constitute a mistrial.   *People* v. *Taylor*, 117 Mich. 583; *People* v. *Jones*, 48 Mich. 554.   After a jury has been impaneled it may be shown at any stage of the trial that a juror has testified falsely as to his qualifications, in which case a juror may be withdrawn and the jury discharged.   *Simmons* v. *U. S.*, 142 U. S. 148.   The court in that case quoted with approval the language of Mr. Justice Story in *U. S.* v. *Perez*, 9 Wheat. (U. S.) 579:

"We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.   They are to exercise a

sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office."

Mr. Justice Curtis, in *U. S.* v. *Morris*, 1 Curt. (U. S.) 37, said:

"It is a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case."

A qualified jury is essential to constitute jeopardy. The court may, at any time during the progress of the trial, arrest it to determine the legal qualifications of a juror. If it be ascertained, upon an examination, that a juror was disqualified when sworn and accepted, or by subsequent conduct has become disqualified, the court may discharge the jury without prejudice to a new trial. Such conduct on the part of a juror is that overruling necessity essential to constitute a mistrial. *In re Ascher*, 130 Mich. 540.

In *People* v. *Jones*, supra, the plea of former acquittal showed no verdict, but did show that a jury was impaneled and proofs taken, and the court held:

"Under all the authorities this entitled the defendant to a verdict one way or the other, and if the jury was discharged without verdict and without any overruling necessity this was a final discharge of the accused."

Appellate courts will not interfere with the action of trial courts in discharging juries, where facts are found upon which such action can be based. But the facts must be found and placed upon the record. *State* v. *Wiseman*, 68 N. C. 203. The court cannot arbitrarily discharge a jury upon rumors of improper conduct, or of attempts to

corrupt one or more of them. In the *Ascher Case* the trial judge made a specific finding of facts showing corrupt conduct on the part of some of the jurors, an utter disregard of the instructions of the court, and pre-existing bias on the part of some of the jurors in favor of the respondent contrary to their sworn statements when examined upon the voir dire, and that an officer in charge of the jury was made drunk by some of the jurors. Under such conditions the accused had not been in jeopardy. No such state of facts is found here. No juror is found to be disqualified; neither is the entire panel found to be tainted. Rumor and suspicion are not sufficient; neither is the fear on the part of the trial judge "that a fair and impartial trial is not certain to be the result." Under the facts of this case, both the accused and the people were entitled to have the case submitted to the jury. The accused was in legal jeopardy. No overruling necessity for the discharge of the jury had arisen. It follows that the conviction must be reversed, and the prisoner discharged.

While it is unfortunate that the respondent shall escape punishment for his crime, it is essential, for the public safety, and for the protection of accused persons, to preserve those forms of procedure provided by the Constitution and the laws, and guaranteed to every citizen. While in the *Ascher Case* the trial judge entered upon an ex parte and private examination, as did also the judge in this case, and made his finding from such an examination, speaking for myself, I desire to say that I do not regard that as the proper practice. I think the examination should take place in the presence of the prosecuting attorney, the respondent, and his counsel, and the jury or jurors who are charged with misconduct. It is justice to a juror that he have a hearing before a jury is summarily discharged because of misconduct charged against him.

2. While it is unnecessary to refer to any other of the errors alleged, we deem it important to refer to one. It

is clearly the duty of the court not to discharge the jury
so long as there is any reasonable probability that they
can agree.   The second jury in this case did not state that
they could not agree, their only statement being that they
had so far been unable to agree.   The plain inference from
this language is that the jury had not reached the conclu-
sion that an agreement was improbable.   The judge
arbitrarily refused to ask them as to the probability of an
agreement.   No authority is cited which holds that the
court may discharge a jury without ascertaining whether
an agreement is probable.   As to the length of time a jury
should be kept out, and what it is essential the record
should show, the authorities are not agreed.   The com-
mon practice has been, in this State, at least, to inquire of
the jury as to their ability to agree, and the court is justi-
fied in accepting their statement that they cannot agree
as proper evidence in determining the question.   *People*
v. *Harding*, 53, Mich. 481.   Chief Justice Shaw stated
the rule as follows :

"It has been held in modern times, though it was long
doubted,   *   *   *   that where the jury, after being long
kept together, cannot agree, where it is manifest that
they have no reasonable prospect of agreeing, and no means
remain but famine or exhaustion to compel them to agree,
or where the powers of the court are near terminating by
the legal termination of their session, the court, as a
power necessarily incident to the due and regular admin-
istration of justice, may discharge the jury without the
consent of the prisoner, and again impanel a jury and
put him upon his trial."   *Com.* v. *Roby*, 12 Pick. (Mass.)
496.

The jury had made no requ st to be called into the
court-room.   The presiding judge sent for them after they
had been out only about four hour, and discharged them
upon the sole statement that so far they had been unable
to agree.   Whether this would be fatal to the conviction
we need not determine.   We discuss the matter in order
to show what we believe to be the proper practice, as a

guide in future cases. The practice indicated is justice to the accused, to the jurors, and to the people.

Conviction reversed, and the prisoner discharged.

McALVAY and BLAIR, JJ., concurred with GRANT, J.

CARPENTER, C. J., and MOORE, J. We concur in the first proposition discussed in the foregoing opinion. As this disposes of the case, we think it unnecessary to express any opinion respecting the second proposition.