250 So.2d 613

**Cleveland PARHAM, III**

v.

**STATE.**

**6 Div. 169.**

Court of Criminal Appeals of Alabama.

June 29, 1971.

---

William T. Kominos, Birmingham, for appellant.

No brief from State.

CATES, Judge.

Robbery: sentence, ten years. The State failed to appear at argument and submitted without filing a brief.

**I**

For prior proceedings see Parham v. State, 285 Ala. 334, 231 So.2d 899 wherein it was said:

"* * * PER CURIAM. This is an appeal from the denial by the circuit court of a petition for a writ of habeas corpus filed by the defendant, Parham.

"In substance, his petition alleged that he had been brought to trial upon an indictment for robbery and that a mistrial had been erroneously declared by the trial judge, thus placing him in jeopardy, and thereby acquitting him.

"Petitioner alleges that the trial judge, in the absence of the jury and over the known objection of the counsel for defendant and off the record, indicated around 5:30 P.M. that if the jury failed to reach a verdict by 10:00 P.M. a mistrial would be declared and the jury would be dismissed. Further, he alleges that the jury failed to reach a verdict by 10:30 P.M., and in the absence of defendant and his counsel and over his known objection, the bailiff dismissed the jury and the next morning the trial judge declared a mistrial.

"The hearing on the petition was heard on November 25, 1968 and the petition was denied. The petition was opposed there and here on the ground that habeas corpus is not the proper remedy. We agree. * * *."

The appellant pleaded former jeopardy. The State stipulated that the record in Parham, supra, would be the evidence to support the plea.

It is undisputed that in the absence of both the defendant and his attorney, the bailiff told the jury they could disperse sine die at shortly before 11:00 P.M. The judge was not present.

The next day the judge purported to formalize this end of the case by cloaking it under the statutory guise of a mistrial. This was error.

At the second trial the plea of former jeopardy was denied and in this the court below erred: First, the defendant had no chance to have the initial trial jury polled on their prospects of verdict. Curry v. State, 203 Ala. 239, 82 So. 489; second, it is improper for the judge to delegate to the bailiff the responsibility of determining their discharge.

Double jeopardy is facile of comprehension, difficult of illustration. In every trial at common law there is a point of no return. As with a point on a sea, the demarcation is not easy either in practice or in teaching.

A trial is an adversary affair drawing much of its etiquette from mediaeval trials by combat, iv Bl.Com. 346–348. Hence, lawyers sometimes today are often looked on as antagonists rather than protagonists.

From this background arose the formality of accusation, arraignment with traverse or avoidance, selection and swearing of the petty jury, then the charging of the jury with the deliverance of the prisoner at the bar. Murray v. State, 210 Ala. 603, 98 So. 871; Bell v. State, 44 Ala. [393] 394; Powell v. State, 37 Ala.App. 192, 65 So.2d 718; Epps v. State, 28 Ala.App. 105, 179 So. 395; Lyles v. State, 41 Ala.App. 1, 122 So.2d 724; Artrip v. State, 41 Ala.App. 492, 136 So.2d 574.

Our statutory oath or affirmation for petty jurors [1] calls for them to (1) "well and truly try all issues * * * which may be submitted * * * (2) and true verdicts render according to the evidence * * *." Code 1940, T. 30, § 58.

At an early stage in this country it was recognized that the doctrine of a jury being compelled to deliberate until verdict could be carried to absurd extremes. Under this view the expression "manifest necessity" was used to adumbrate permissible grounds to authorize the court to discharge the jury sine veredicto. This principle was most articulately voiced by Justice Story. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Nugent v. State, 4 Stew. & P. 72.

In Alabama it has become metamorphosed from our decisional law into our Constitution and statutes. Constitution, 1901, § 9 provides:

"That no person shall, for the same offense, be twice put in jeopardy of life or limb; *but courts may, for reasons fixed by law, discharge juries from the consideration of any case and no person shall gain an advantage by reason of such discharge of the jury.*" (italics added).

The italicized language was new with the 1901 Constitution.

Code 1940, T. 30, § 100, which was first introduced into our statutory scheme by the 1907 Code commissioner reads as follows:

"The courts or presiding judges in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated. In all cases, in which the jury is discharged, without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial; and no person shall gain any advantage by reason of such discharge of the jury."

Much of what was written in Cook v. State, 60 Ala. 39 could be analogized to what happened in the instant case with the discharge of the jury. Moreover, here the bailiff is not authorized by § 100, supra, to discharge the jury. Only the

---

1. "You shall well and truly try, and true deliverance make, between our Sovereign Lord the King and the prisoner at the bar, whom you shall have in charge, and a true verdict give according to your evidence; so help you GOD."—Directions for Holding Court in Colonial Georgia, 2 Am.J.Leg.Hist. 321 at 337.

"courts or presiding judges" are so empowered.

An annotative note in the 1940 Code (vol. 6, p. 65) under § 100, supra, mistakenly cites Curry v. State, 203 Ala. 239, 82 So. 489 as holding that the defendant need not be in court when a mistrial is entered and the jury discharged.

In Walker v. State, 117 Ala. 42, 23 So. 149 the term of court (under the old law) expired at midnight and the trial, like Cinderella's coach, lost its magic.

Examples of proper manifest necessity have arisen from: illness of prisoners, jurors, judges (in State v. Tatman, 59 Iowa 471, 13 N.W. 632 of the judge's wife; in Hawes v. State, 88 Ala. 37, 7 So. 302 of a juror's wife); death of a juror, the judge or a near relative of either; tardily disclosed disqualification of a juror not consented to; misconduct of a juror or bailiff; mental incapacity or intoxication of a juror. See *Nugent,* supra; Mixon v. State, 55 Ala. 129; People ex rel. Brinkman v. Barr, 248 N.Y. 126, 161 N.E. 444. However, misconduct of a defendant operates in the nature of an estoppel as a species of attempted invited error. In re State ex rel. Battle, 7 Ala. 529; Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353.

Protracted failure of a jury to agree was an early example of the necessity rule. United States v. Perez, supra. However, as to whether a jury may be discharged for failure to agree has been a more difficult and variously answered question. See Ned v. State, 7 Port. 187 (error to discharge for mere failure to agree); McCauley v. State, 26 Ala. 135 (dictum— cause for discharge reviewable and if found unwarranted discharge is an acquittal); Ex parte Vincent, 43 Ala. 402 (semble: jury must be held together to end of term); per contra, In re State ex rel. Battle, 7 Ala. 259.

Now, however, the Constitution of 1901, § 9, and Code 1940, T. 30, § 100, give the trial judge discretion to discharge a jury upon failure to agree, Alford v. State, 243 Ala. 404, 10 So.2d 373; Andrews v. State, 174 Ala. 11, 56 So. 998, McClellan and Mayfield, JJ., dissenting.

It is clear that this Code section recognizes the fact that hung juries come about and our law today does not contemplate that the circuit judge shall cart them about on his itinerary from county seat to county seat until they agree. Nor are they nowadays to be kept 'without meat, drink, or fire (candle-light excepted), Winsor v. Queen, [1866] L.R. 1 Q.B. 289, also p. 389. Under T. 30, § 97, it is provided that the county must furnish suitable lodging and meals to jurymen.

In People v. Parker, 145 Mich. 488, 108 N.W. 999 we find:

"* * * it is clearly the duty of the court not to discharge the jury so long as there is any reasonable probability that they can agree. * * * The judge arbitrarily refused to ask them as to the probability of an agreement. * * *"

See Paulson v. Superior Ct. of El Dorado County, 58 Cal.2d 1, 22 Cal.Rptr. 649, 372 P.2d 641 (h. n. 8); People v. Carter, 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353 (coerced verdict).

On the former jeopardy hearing all the allegations quoted above from Parham v. State, 285 Ala. 334, 231 So.2d 899 were established without dispute. The bailiff testified that he alone was with the jury in the courtroom at a little before 11:00 P.M. Acting on the prior instructions from the judge presiding at the first trial he told the jury to disperse.

Colloquy with that judge evoked the following at the conclusion of the testimony in the habeas corpus hearing:

"THE COURT: That is the usual procedure. We instruct the bailiff if they can't get together by a certain time after we have kept them so long and they

satisfy the Court and bailiff that they are hopelessly deadlocked, we make it a practice to dismiss the jury. We don't want it told that we punish the jury by keeping them locked up. We are not punishing the jury. Then [sic] couldn't get together and they were hopelessly deadlocked and I authorized the dismissal of them if they didn't get together by 10:00 o'clock and I believe, of course, that wasn't shown. They stayed until 11:00 o'clock. I believe that is my information that they did stay until 11:00 o'clock or thereabouts.

"I believe Mr. Copeland said they did. I am told and I am sure the other judges have done the same thing. So, I would overrule the—·

"MR. KOMINOS: We will take an exception to that, thank you, Judge."

II

Bailiff (from the French *baillier* or *bailler,* to hand over) in law signified a keeper or protector. A trial court's bailiff is a sworn servant who has the special duty of guarding and protecting juries during their deliberations from improper intrusions or messages or contacts. The Saxon term was *reeve,* which shows the closeness to the sheriff or shire reeve. Ward v. State ex rel. Goldsmith, 203 Ala. 306, 82 So. 662. C. f. 23 Halsbury's Statutes of England (2d ed.) Sheriffs and Bailiffs 295. "Duties at * * * Quarter Sessions"—* * * to * * * look after the jurors." Sec Code 1940, T. 13, § 186.

Jones, Alabama Practice & Forms § 1800 gives the bailiff's oath. See Gregg v. State, 43 Ala.App. 538, 195 So.2d 803.

In Mount v. State, 45 Ala.App. 244, 228 So.2d 857 we held that the performance of a judicial act, e. g., issuance of a search warrant, was non delegable. There a statute had made the clerk of the county court a warrant issuing magistrate. The deputy clerk could not properly issue warrants.

See also McConnell v. Goodwin, Judge, 189 Ala. 390, 66 So. 675.

■■ The circuit court is of constitutional origin. Const.1901 § 139. We doubt that any of the *judicial* functions of a circuit judge could by legislation (let alone a judge's order) be delegated to one not a commissioned circuit judge. In Opinion of the Justices, 280 Ala. 653, 197 So.2d 456 it is said:

"The function of a 'judge' is to determine controversies between litigants, and they are not advisers. In re Richardson, 247 N.Y. 401, 160 N.E. 655. A 'judge' is one who presides over a court. State ex rel. Madden v. Crawford, 207 Or. 76; 295 P.2d 174. His 'judicial acts' are the performance of duties which have been confided to him as a judicial officer to be exercised in a judicial way. Supervisors of Onondaga v. Briggs, (N. Y.) 2 Denio 26.

"As stated by Chancellor Kent, 'The general rule is that judicial offices must be exercised in person, and that a judge cannot delegate his authority to another. I do not know of any exception to this rule with us.' 3 Kent Com. 12th Ed. 457.

"[3] House Bill 152 does not assume to create a court. Indeed, courts of probate are established by Section 139 of our Constitution. The bill seeks to establish the office of a deputy probate judge. As stated in State of Indiana ex rel. Hovey v. Noble, 118 Ind. 350, 21 N.E. 244, 4 L.R.A. 101, '* * * a deputy judge is a thing unheard of in jurisprudence, and unknown to the constitution.'

"In the aspect just written to, House Bill 152 affronts Sections 139 and 149 of our Constitution."

We hold that the declaration of a mistrial both under § 100, supra, and the Constitution § 9 is a judicial function and hence non delegable. Thus, to deduce

manifest necessity it is necessary for the *court* to ascertain that the division of the jury arises from a question of fact and not a dispute over the meaning of the court's charge. Also, an examination of the jurors is warranted, if not mandatory, to make sure that mere obduracy unrelated to the evidence is not the clog holding up a verdict.

In this posture we cannot see how a bailiff's report the next day can supply the material which is constitutionally required before declaring a mistrial for a hung jury.

Letting the jury go was in legal effect much like the more plausible situation found in State ex rel. Dato v. Himes, 134 Fla. 675, 184 So. 244. There we find:

"The recessing of the jury by the county solicitor and the clerk of the court without the consent of the defendants, and the subsequent orders of the resident Judge of the court for a mistrial and a discharge of the jury without the consent of the defendant, were mere incidents resulting from the legally unnecessary abandonment of the trial by the presiding Judge upon being served with the illegal Writ of Prohibition. No legal necessity appearing for abandoning the trial on August 9, without the consent of the defendants, after the defendants had been put in jeopardy under the information charging a felony, the demurrer to the pleas of former jeopardy should have been overruled."

In the absence of the judge presiding at the trial there can be no court as that term is known to our law. State v. Darrow, 56 N.D. 334, 217 N.W. 519; Smith v. State, 230 Ala. 18, 158 So. 808.

In this set of facts we conclude that the trial judge abused his discretion in (1) instructing the bailiff that he, the bailiff, (rather than the court) could let the jury go; and (2) entering up a mistrial on the foundation of this irregularity.

At the second trial the court below should have honored the defendant's plea of former jeopardy. It is regrettable that the State has lost a conviction and also that the defendant has been put through an obstacle course.

For the error pointed out the judgment of the circuit court is reversed and one here rendered discharging the defendant from the instant indictment sine die.

Reversed and rendered.

ALMON, J., concurs in result.