A jury found defendant (appellant) guilty of carnal knowledge of a girl under the age of twelve and fixed his punishment at imprisonment for sixty years. He was sentenced accordingly.
This is the second appeal in the case. On the former appeal(Koch v. State, Ala.Cr.App., 384 So.2d 1191 (1980), the judgment of the trial court was reversed and the cause remanded by reason of the fixation by the trial court of the punishment, which should have been determined and fixed by the jury as required by Code of Ala. 1940, Tit. 14, § 398, which was effective until October 31, 1977, the effective date of Code of Ala. 1975, and it having been shown therein by the evidence that the alleged crime, if committed, was committed prior to the effective date of Code of Ala. 1975, which provides that the punishment shall be fixed by the court. On the first conviction, the court fixed punishment at ninety-nine years' imprisonment.
Before the second trial commenced, defendant filed a plea of former jeopardy. Appellant asserts that the trial court was in error in ruling that the plea of former jeopardy was not sustained by the facts. He argues that the court's action in not requiring the jury on the first trial to fix the punishment and in not imposing a sentence in accordance with a verdict of the *Page 798 
jury is to be likened to an order of a mistrial, which when erroneous and not expressly or impliedly consented to by defendant, would form the basis for a valid plea of former jeopardy. He relies particularly upon Parham v. State,47 Ala. App. 76, 250 So.2d 613, 618 (1971), in which it was held that former jeopardy had occurred on the first trial and became a bar to the second trial, by reason of the discharge of the jury in the first trial pursuant to action of the trial court, without the knowledge or consent of defendant or his attorney in "(1) instructing the bailiff that he, the bailiff, (rather than the court) could let the jury go [if the jury failed to reach a verdict by 10:00 P.M.]; and (2) entering up a mistrial on the foundation of this irregularity."
No such circumstance as found in Parham is involved in the instant case, and no action that can be likened to a mistrial occurred. Parham furnishes no precedent for sustaining the plea of former jeopardy in this case. However, there is precedence to the contrary, at least in logical analogy in the following:
 "The principles settled in Dover's [v. State, 75 Ala. 40] case are fully supported by the uniform practice and the decisions in this court extending back for the past forty years. The precise question arose in Cobia v. The State, 16 Ala. 781, decided in 1849. The defendant was there convicted of murder, the verdict of the jury being defective in failing to state the degree of the homicide — a statutory requirement. The judgment of conviction was reversed, on the ground that the verdict, being defective, did not warrant the sentence pronounced by the court, which was imprisonment in the penitentiary. The question was directly presented, whether the prisoner should be discharged, as having been once in jeopardy, or whether he could be constitutionally put on trial again upon reversal of the judgment of conviction. It was contended that he should be discharged, `because he was regularly put upon his trial upon a sufficient indictment, and the evidence in support of the charge submitted to the jury; and that he was therefore in jeopardy,' within the meaning of the thirteenth section of the first article of the constitution of 1819, which was, we may add, the same as article I § 10, of our present constitution, relating to the subject of jeopardy in criminal cases. The court, after due deliberation, refused to sustain this view, and held the prisoner in custody for another trial. The true rule was held to be, that the discharge of a jury, without legal necessity or consent, which will operate as an acquittal, is a discharge before the rendition of the verdict by the jury; and that a discharge after a defective verdict, on which judgment had been erroneously pronounced, was not such jeopardy as would prevent the defendant from being put on trial again upon reversal of the judgment on appeal at his instance. This we understand to be the doctrine of Ned v. The State, 7 Port. 213, which is referred to in Cobia's case. And as far back as the time of Hawkins and of Blackstone, it was generally said, in discussing this subject, that the jury could not be discharged, unless in case of evident necessity, `till they had given their verdict.' — 4 Black. Com. 461." Gunter v. The State, 83 Ala. 96, 104-105, 3 So. 600 (1887).
The principle stated in Gunter, supra, has been consistently followed thereafter. Washington v. State, 125 Ala. 40, 44, 45,28 So. 78, 79 (1889); Luquire v. Holman (Warden of Kilby),279 Ala. 203, 183 So.2d 799 (1966); Alford v. State, 30 Ala. App. 590, 10 So.2d 370, cert. denied, 243 Ala. 404, 10 So.2d 373
(1942).
Some piquancy is to be found in the point now made by appellant that is absent from the circumstances in the cases just cited in the fact that on the first trial of the instant case defendant objected to receipt of the verdict "upon the grounds that it does not fix the punishment." We limit our decision on the particular point to the facts of this case, in which the defendant adequately preserved for the purpose of an appeal his right to have the jury, rather than the judge, fix the punishment. We do not look upon defendant's objection as *Page 799 
making the point that a judgment in which the court fixed the punishment would be void, which would be true of any judgment of conviction in a case tried by a jury in which a mistrial had been declared. The action of the defendant thereafter is inconsistent with such a contention. He filed a motion for anew trial, which was overruled, and raised the same point he raised on the trial, i.e., the judge erroneously fixed the punishment. Upon an adverse ruling by the trial court, he continued correctly to treat the judgment as an erroneous, but not a void, judgment by appealing and obtaining relief by a reversal of the judgment and a remandment of the cause. He has not only waived any claim to the effect that he was entitled to have the particular jury in the first trial, which found him guilty, to finish its duty, contrary to the mistaken belief of the trial judge as to such duty, by fixing the punishment, but he has also become estopped to assert the claim now. Moore v.State, Ala.Cr.App., 366 So.2d 1150, 1154 (1979); Mitchell v.State, 16 Ala. App. 635, 80 So. 730 (1918). Although the estoppel is not as clear in the instant case as in the cases just cited, in which estoppel was found in the action of defendant in moving for and obtaining relief on the first trial on the ground of a material variance, defendant eventually obtained in this court, by his former appeal, everything in substance the defendant asked for in the trial court and should not now be allowed to renounce the benefit thereby received and receive a benefit inconsistent therewith. We do not attempt to pass upon the question whether former jeopardy is to be found in a case under circumstances including the same as existed at the conclusion of the first trial but in which there is an additional circumstance that the defendant then and there made it clear that he wanted the particular jury then trying the case to complete its duty by fixing the punishment.
Appellant does not question the sufficiency of the evidence to show that defendant did in fact "carnally know" the alleged victim. He insists, nevertheless, that the alleged victim was not "under the age of twelve years" at the time and that there is no substantial evidence that defendant committed such crime within the period of the three-year statute of limitations. Code 1975, § 15-3-1. The alleged victim was one of three stepdaughters of defendant. We see no need to discuss any of the details of the evidence other than as they pertain to the questions whether the crime as alleged was committed by defendant before the alleged victim was twelve years of age and whether it was committed within three years from the commencement of the prosecution.
There is agreement between the parties that the prosecution was commenced on July 16, 1979. The parties seem to agree that the victim became twelve years of age on December 21, 1977. It is therefore for us to determine whether there was substantial evidence that there was a commission of the alleged crime between July 16, 1976, and December 21, 1977. If not, the judgment must be reversed.
The evidence, which consisted exclusively of the testimony of the alleged victim, her two sisters and a court reporter who read from his transcript some of the testimony of defendant in the previous trial, lacked desirable clarity as to the time of any of a series of occasions in which defendant carnally knew or attempted to carnally know the alleged victim. Doubtless, the vagueness is largely attributable to the long period of time involved and the tenderness of age of the witnesses as to the facts.
According to the testimony of the victim, her mother married the defendant in 1972; the family commenced living in Florida, then moved to Michigan, then back to Florida and then to Geneva County, Alabama. At first they lived in Hartford and then moved to Slocomb. They lived in two or three different houses while in Slocomb.
We are convinced that much of the evidence relates to defendant's carnal knowledge or his attempt to have carnal knowledge of the victim prior to July 16, 1976, and that such acts were barred by the statute of limitations. In addition, however, to such incidents, the victim testified: *Page 800 
 "Q. Would your mother be at work or would she be at home?
"A. She would be at work.
"Q. Where were your two sisters when this happened?
 "A. They would be at school or over at somebody's house.
 "Q. Some of the times they were in school and some of the times they were where?
"A. At somebody's house.
 "Q. Now, after you left this house and moved out into the old house on the dirt road, do you know when that was?
"A. '77.
 "Q. All right. Did he have sexual contact with you in this house?
"A. Yes.
". . . .
"MR. BOSWELL: On how many occasions did that happen?
"A. Once.
"Q. And that was in '77, you said?
"A. Yes."
Thereupon the witness testified as to details of the incident. She was then interrogated as to the time defendant was arrested and replied that it was the year before her testimony in 1980. She testified that defendant was not living with the family at the time of his arrest, that he had not been living with them at the time of his arrest for "six months, I think, six or seven months." She said that at the time of his arrest he was still living in the house where the latest incident occurred, that she, her sisters and her mother had left that house and moved to Malbern, and then "moved back here." She testified that some time after the separation her mother obtained a divorce from the defendant.
On cross-examination, the witness testified in part as follows:
"Q. And he wasn't arrested until 1979, was he?
"A. Yeah.
 "Q. That's two years later after that incident had occurred, and then you told [her girl friend] and the wheels got moving and he was arrested.
"A. (No response).
"Q. Is that right?
"A. What?
 "Q. That there was a two-year period of time before he was arrested?
"A. Yeah.
"Q. Could it have been longer than two years?
"A. What?
"Q. The period of time.
"A. What?
 "Q. From the time that this happened in Slocomb on the dirt road that I was just asking you about until he was arrested, could it have been longer than two years?
 "A. It could have . . . . . . (pause) . . . . . no. I don't know.
"Q. Well, do you know or not, —?
"A. It was about two years.
"Q. About two years?
"A. Yes."
We agree with appellant that the evidence does not show with absolute certainty that the particular incident referred to in the testimony of the victim as quoted above occurred between July 16, 1976, and December 21, 1977, and that some of the testimony of the victim as to her age and grade in school in preceding years tended to show the contrary, but we believe that upon taking all of the evidence into consideration there was substantial evidence that the particular incident occurred within the period stated. The possibility that it occurred in 1977 but not before December 21 of that year exists, but it is hardly reasonable to conclude that it occurred between December 21 and January 1, a holiday season. She said her sisters were at school at the time. In this connection, it is to be noted that in Koch v. State, supra, "The offense in question was committed some time during the spring of 1977 while the prosecutrix was in the sixth grade."
In our opinion, there was substantial evidence that defendant had carnal knowledge of the alleged victim prior to her becoming twelve years of age and within three years before the commencement of the prosecution. We cannot say that the jury was not *Page 801 
convinced thereof from the evidence beyond a reasonable doubt.
Defendant did not testify in the second trial, but his testimony in the first trial was introduced in evidence over the objection of defendant. The ruling of the court in this respect was not erroneous. Cantrell v. State, Ala.Cr.App.,353 So.2d 80 (1977); Willingham v. State, 50 Ala. App. 363,279 So.2d 534, cert. denied, 291 Ala. 803, 279 So.2d 538 (1973).
Appellant charges that the trial judge committed error in overruling defendant's motion that he recuse himself. The ground stated in the motion is that "said Judge has heard the testimony of previous trial of this cause, is biased and prejudiced against this Defendant, to the extent that this Defendant could not obtain a fair and impartial trial before said Judge, said bias and prejudice being exhibited by said Judge's remarks following the previous trial of this cause, a portion of the court record containing said remarks being attached hereto as Exhibit A and made a part hereof." In his brief, counsel relies upon and quotes the following part of what the trial judge said in sentencing the defendant on the first trial:
 "There is just no place in society for anyone who has pursued the course of conduct which the evidence shows that you have pursued in the last four or five years. . . . [L]ike I say, there is no place in society for you, and, therefore, the Court is going to sentence you to ninety-nine years in the State Penitentiary. . . . I will say one other thing. This is a ninety-nine year sentence, and basically, as far as I am concerned, you should serve every day of it. . . . As far as I am concerned, you ought to stay there ninety-nine years. . . ."
The quoted statement does not show personal bias or prejudice against defendant. The bias or prejudice that will disqualify a judge must be "personal" as distinguished from "judicial" bent; the disqualifying bias or prejudice "characterizes an attitude of extrajudicial origin, derived coram non judice." Ex parteWhite, 53 Ala. App. 377, 300 So.2d 420, cert. denied, 293 Ala. 778, 300 So.2d 439 (1974); Pannell v. State, Ala.Cr.App.,356 So.2d 219, cert. denied, 356 So.2d 222 (1977). Although it is clear that the judge was not as lenient in his fixation of punishment on the first trial as was the jury on the second trial, his attitude as to the proper punishment was not his prerogative, and we find nothing in the transcript or record of the second trial that indicates any bias or prejudice whatever toward defendant.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.