PEOPLE *v*. DAVIS.

CRIMINAL LAW — MISTRIAL — FORMER JEOPARDY—ABUSE OF DIS-
  CRETION.
　　Where, in a prosecution for manslaughter, after examina-
　　tion of the jurors, the trial court found that all of them
　　but two had an erroneous view as to certain testimony
　　submitted, it was within the court's discretion, under the
　　circumstances, to declare a mistrial, and, in the absence
　　of a showing of abuse in the exercise of said discretion,
　　it will not be disturbed.[1]

Error to recorder's court of Detroit; Faust (John),
J. Submitted October 15, 1925. (Docket No. 136.)
Decided December 22, 1925.

　George Davis was convicted of manslaughter, and
sentenced to imprisonment for not less than 7½ nor
more than 15 years in the State prison at Jackson.
Affirmed.

*Colombo, Colombo & Colombo* (*Proctor K. Owens,*
of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, *Robert M.
Toms,* Prosecuting Attorney, and *Frank B. Ferguson,*
Assistant Prosecuting Attorney, for the people.

BIRD, J. The defendant was convicted of man-
slaughter in the recorder's court for the city of Detroit.
He assigns error in this court. The sole question
raised here is whether the trial court was in error in
denying his plea of former jeopardy. During the
cross-examination by defendant of Robert Trice, a
witness who saw the stabbing affray, he read to the
witness certain of his testimony given on the pre-

[1]Criminal Law, 16 C. J. § 2567; 17 C. J. § 3587.

liminary examination of two other participants, Williams and Boatright, in the affray, one of whom had been discharged and the other convicted. It was read and presented by counsel in such a manner that the jury could, and did, imply that it was the testimony of the witness at defendant's examination. The objectionable testimony was as follows:

"*Q.* (By Mr. Owen continuing) : Now, were these questions asked you, and did you make these answers thereto?

"*Q.* These two boys (indicating defendants) ?

"*A.* Well, that man behind, and some more. I did not see this guy in front.

"*Q.* You did not see this fellow in front?

"*A.* No; that boy stabbed him (indicating).

"*Q.* The boy in the rear?

"*A.* Yes, he stabbed him right here (indicating) ; and when he stabbed him he broke and ran, and this other guy, that was with him, said 'give me the knife. I will finish him,' and he grabbed the knife and stabbed him in the back. That fellow is not—

"*Q.* That fellow is not either of these two boys?

"*A.* That guy behind there stabbed him.

"*Q.* But the fellow who said 'give me the knife' is not here?

"*A.* No.

"*Q.* Were those questions propounded, and did you make those answers thereto?"

To this the prosecutor objected, and said:

"If your honor, please, if you will remember, the examination in the Williams case was conducted in this court and conducted by your honor, at which time the defendant, Williams, and a man by the name of Gus Boatright, were being examined. This defendant was not in custody at that time, he had not been apprehended."

It will be seen that this testimony was open to the inference that defendant was one of the defendants referred to and exonerated by the witness. The jury were sent to their room and the matter was discussed

by counsel.   The jury was then brought in and the court examined each one of them as to whether he thought the counsel was reading from the examination of this defendant, and they all, except two, stated that they did.   Inasmuch as defendant had not been apprehended at the time of the examination of the other defendants, it is obvious that the reference of the witness to the other defendants could have had no reference to him, and was misleading to the jury unless it was understood by them.   After examining the jury at some length the trial court declared the proceedings a mistrial.   Subsequently a new jury was sworn to try the case.   Defendant then entered a plea of former jeopardy, which was overruled, and he was convicted of manslaughter.

Defendant argues that it was error to discharge the jury; that at the most it was nothing more than a misunderstanding of the testimony, which could have been corrected by the prosecutor and court.

This court, in *People* v. *Brosky,* 222 Mich. 651, laid down the following rule to guide in such matters:

"American authorities generally announce the rule that the power to discharge the jury is within the sound discretion of the trial judge, and that his exercise of such discretion will not be reviewed by the appellate courts unless its clear abuse appears.   The power ought, of course, to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.   16 R. C. L. p. 321."

See, also, *People* v. *Schepps,* 231 Mich. 260.

While we might agree with defendant's counsel that it was a matter that could have been corrected by the prosecutor and court, we feel that the court, under the circumstances, had a certain discretion to exercise. Before he exercised it he followed the suggestion made by this court in *People* v. *Brosky, supra,* where it said:

"Before a jury is dismissed under circumstances like those in the present case, some effort should be made by the trial court to ascertain what effect the episode had upon the minds of the jurors."

The trial judge examined each juror and found that all of them, save two, had an erroneous view of the situation. They understood that counsel was reading from defendant's examination. After learning how the testimony had affected them he exercised his discretion and dismissed the jury. The trial judge is usually in a better position to determine the necessity than we are. He has the advantage of seeing the jurors, of observing the effect produced upon them by the testimony, of seeing the witness, and the attitude of counsel. There was a basis for the exercise of his discretion, and, therefore, his conclusion will not be disturbed under the rule.

The conviction is affirmed.

MCDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.